STATE of North Dakota,
Plaintiff-Appellee,

v.

Walter WOODWORTH,
Defendant-Appellant.

Crim. No. 503.

Supreme Court of North Dakota.

Oct. 7, 1975.

Rehearing Denied Oct. 30, 1975.

8

Kent Higgins, Sp. Public Defender, Bismarck, for defendant-appellant.

John M. Olson, State's Atty., for plaintiff-appellee.

SAND, Judge.

The appellant, Walter Woodworth, and his brother, Stewart Woodworth, were convicted on August 2, 1974, in the Burleigh County Court of Increased Jurisdiction of disturbing the peace under Section 5–01–05.3, North Dakota Century Code. Walter was sentenced to ten days in the county jail, to be given credit for eight days already served and the balance suspended during good behavior. Walter Woodworth appealed from this judgment.

## FACTS

The facts of the case are not in dispute. At two o'clock in the morning of July 2, 1974, the police, in response to a call, came to the intersection of Ninth Street (an arterial street) and Avenue E in Bismarck, where defendant Walter Woodworth and his brother, Stewart, were sitting in the middle of the intersection, partially blocking the street, and making "a lot of noise." The intersection is in a residential area. A number of persons were present and five to ten cars passed through the partially blocked intersection. When asked by the police to leave, the Woodworths refused. After failing to persuade them to leave, the officers attempted to physically remove them, whereupon a scuffle broke out. The defendants were arrested and taken to the police station, where they were charged with violating Section 5–01–05.3, N.D.C.C., which provides as follows:

"Any person who commits an act which disturbs the public peace or constitutes disorderly conduct is guilty of a misdemeanor." [1]

The pertinent part of the complaint charged as follows:

". . . did commit the crime of disturbing peace/disorderly conduct, committed as follows, to wit: that the . . defendant did . . . willfully . . disturb the public peace and engage in disorderly conduct, to wit: did hamper and obstruct traffic on a public street, use loud and boisterous language and shout obscenities and be on a public street in an intoxicated condition, all disturbing the public peace and other citizens."

At the trial, the defendant questioned the constitutionality of the statute. The trial court noted that the statute sets forth two separate items, each of which constitutes a misdemeanor. The court declared that the portion which "constitutes disorderly conduct" was unconstitutional because of vagueness, but convicted the defendants of disturbing the peace. The defendant, Walter Woodworth, on appeal, now claims that the whole statute is void for vagueness and also void for overbreadth.

## VAGUENESS

The due process clauses of the State and Federal Constitutions require definiteness of criminal statutes so that the language, when measured by common understanding and practices, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to fairly administer the law. In determining whether adequate warning is given, the court should view the statute from the standpoint of the reasonable man who might be subject to its terms. *State v. Julson,* 202 N.W.2d 145 (N.D.1972); *State v. Hagge,* 211 N.W.2d 395 (N.D.1973); 21 Am.Jur.2d Criminal Law § 17, page 99.

The mere use of general language does not support a vagueness challenge.

1. This section has since been repealed (1 July 1975).

In *State v. Hagge, supra,* this court had under consideration the constitutionality of Section 39–09–01, N.D.C.C., which read as follows at the time:

"Any person driving a vehicle upon a highway shall drive the same in a careful and prudent manner, having due regard to the traffic, surface, and width of the highway and other conditions then existing, and shall give such warnings as are reasonably necessary for safe operation under the circumstances. No person shall drive any vehicle upon a highway in a manner to endanger the life, limb, or property of any person."

The court pointed out that by requiring automobiles to be driven "in a careful and prudent manner, having due regard to the traffic, surface, and width of the highway and other conditions then existing . ." the statute prescribed ascertainable standards.

The term of expression, "careful and prudent manner" over the years has acquired an understandable meaning, and as such constitutes a standard. Likewise, the term "disturb the public peace" has acquired a common meaning. In the instant case, the obstruction of traffic was both hazardous and dangerous, as well as an act prohibited by law. Any ordinary prudent person possessed with ordinary intelligence should have no difficulty realizing that the obstruction of traffic, coupled with boisterous noises, will disturb the public peace.

From the testimony at the trial, it appears the defendants deliberately attempted to create a disturbance so as to cause a certain police officer to appear. They did succeed in creating the disturbance which they actually set out to do. They cannot now be heard to complain that they didn't know what constitutes a disturbance.

" ' . . . The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.' " *State v. Hipp,* 298 Minn. 81, 89, 213 N.W.2d 610, 615 (1973), citing from *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590 (1972).

■ The test of definitiveness of a statute is met if the meaning of the statute is fairly ascertainable by reference to similar statutes or to the dictionary, or if the questioned words have a common and generally accepted meaning. *State v. Willis,* 218 N.W.2d 921 (Iowa 1974).

■ The requisite of definiteness demands no more than a reasonable degree of certainty.

" 'The requisite certainty may sometimes be supplied by materials outside the statutory definition of the offense. Thus, in the case of a statute that deals with offenses difficult to define, the entire text of the statute or the subject dealt with may furnish an adequate standard of definiteness. Words or phrases which might be indefinite in one of their possible senses will not invalidate the statute where they have a well settled common-law or technical meaning which can be employed. Where a statutory offense corresponds to a common-law offense, it is sufficiently certain without any definition, since the common-law definition may be employed even in a jurisdiction which has no common-law offenses as such. And the definiteness requirement is sometimes stated in such a way as to suggest that it is applicable only where the statute creates an offense which was not a crime at a common law.' " *People of Dearborn Heights v. Bellock,* 17 Mich. App. 163, 169 N.W.2d 347, 349, 350 (1969), citing from 21 Am.Jur.2d, Criminal Law, § 17. [Underscoring ours.]

We agree specifically with the underscored statement.

■ Section 5–01–05.3, N.D.C.C., proscribes acts which disturb the public peace or constitute disorderly conduct. The trial court held unconstitutional that portion of the statute making "disorderly conduct" a crime, but upheld the "disturbs the public peace" portion under which the defendant was convicted. The striking down of one clause of a statute as unconstitutional does not affect the remainder of it. Section 1–02–20, N.D.C.C.

■ Disturbing the peace is a common law offense which has acquired an accepted meaning defined as such a violation of the public order as amounts to a disturbance of the public tranquility, by act or conduct either directly having this effect, or by inciting or tending to incite such a disturbance of the public tranquility. 12 Am. Jur.2d, Breach of Peace, § 4, page 666.

■ The application of common law in this state is pursuant to Sections 1–01–03, 1–01–04, 1–01–05 and 1–01–06, N.D.C.C., and case law, the net effect of which is that some statutes are a continuation of common law,[2] and where there is no express constitutional or statutory provision common law applies. We believe common law definitions of words and phrases in statutory offenses of common law derivation apply unless redefined by state law.

■ This court, in State v. Laufenberg, 99 N.W.2d 331, 333 (N.D.1959), a case involving a statute on "grossly disturbing the peace" (Section 12–1901, N.D.R.C.1943)[3] defined "peace" as follows:

" 'By "peace" as used in the law in this connection, is meant the tranquility enjoyed by citizens of a municipality or community where good order reigns among its members, which is the natural right of all persons in political society. It is, so to speak, that invisible sense of security which every man feels so necessary to his comfort, and for which all governments are instituted.' Wharton Criminal Law and Procedure, 2, Sec. 802."

The United States Supreme Court in Wainwright v. Stone, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179, in effect concluded that where a statute has been interpreted by the Supreme Court of the State at the time of the commission of the act, even if the same Supreme Court later declared the act void for vagueness, the interpretation placed upon the statute by the Supreme Court would be given substantial consideration by the United States Supreme Court. Under this concept, the construction and interpretation placed upon Section 12–1901, N.D.R.C.1943, by the North Dakota Supreme Court in the Laufenberg case would still be valid and appropriate even though this section is no longer the law of the State but was the law at the time the act was committed.

The distinction between the statutes in question, Section 5–01–05.3, N.D.C.C., and Section 12–1909, N.D.R.C.1943, is that in the latter the peace must be actually and grossly disturbed. The definition of "peace" otherwise applies to both statutes. It is the disturbance of the public peace as defined supra which constitutes a crime.

The case of Grayned v. City of Rockford, 408 U.S. 104, 107, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972), cited by the defendant, does not support his claim of vagueness. In the cited case an ordinance, referred to as an anti-noise ordinance, in pertinent part read as follows:

"[N]o person while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in

2. In Lembke v. Unke, 171 N.W.2d 837, 842 (N.D.1969), this court said: "In determining the common law of this state we are not restricted to the law as it has evolved over the centuries in England. The common law, which is based on reason and public policy, can best be determined by studying the decisions of our federal and state courts and the writings of past and present students of our country's law over all the years of American judicial history."

3. This section was superseded July 1, 1975.

the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof. . . . ”

The Court held that the ordinance in question was not unconstitutional for vagueness. The Court also observed: “Condemned to the use of words, we can never expect mathematical certainty from our language.” It further observed that the words of the ordinance are marked by free and reasonable breadth rather than meticulous specificity. It concluded that the ordinance as a whole makes clear what is prohibited. The Court speculated that if it were left only with the words “tend to disturb” it may have some problems. But in our situation, we do not have the phrase “tend to disturb.” Our statute states, “disturbs the public peace.”

In *State v. Johnson*, 282 Minn. 153, 163 N.W.2d 750 (1968), the Minnesota Supreme Court had under consideration a breach of peace ordinance, and on page 754, said:

“While this court has had little occasion to discuss the elements of this particular offense, it may be observed that the term ‘breach of the peace’ is a generic term which includes all violations of the public peace or order calculated to disturb the tranquility which members of the public are entitled to enjoy. The culpability of the offense depends upon time, place, and circumstance.”

It further observed that:

“Because the offense of ‘breach of the peace’ comprehends an undesirable form of conduct rather than a specific act, no single definition can cover the full range of acts which may constitute the offense.”

The ordinance contained the following, as is pertinent to our question here, “ . . . or any other conduct which disturbs the peace and quiet of another save for participating in a recognized athletic contest.”

The court held the statute not invalid for vagueness. We conceive no legal distinc-

tion between “breach of the peace” and “disturb the public peace.”

In the case of *People of Dearborn Heights v. Bellock, supra*, the Michigan Supreme Court had under consideration an ordinance which stated:

“ ‘Any person or persons who shall make or assist in making any noise, disturbance, trouble or improper diversion, or any rout or riot, by which the peace and good order of the city of Dearborn Heights are disturbed, shall be guilty of a breach of the peace, and disorderly conduct.’ ”

And it also said that:

“A ‘breach of the peace’ has been defined in Michigan as any intentional violation of the natural right of all persons in a political society to the tranquility enjoyed by citizens of a community where good order reigns among its members.”

The statute was held valid in face of a challenge of being too vague.

In *State v. Coomes*, 170 Neb. 298, 102 N.W.2d 454, 457 (1960), the Supreme Court of Nebraska said that:

“Breach of the peace is a common law offense. The term ‘breach of the peace’ is generic and includes all violations of public peace, order, decorum, or acts tending to the disturbance thereof.”

The statute in question read:

“ ‘Every person who shall willfully disturb the peace and quiet of any person, family or neighborhood, shall upon conviction thereof be fined . . . .’ ”

The court held that the statute was not invalid because of vagueness.

We further note that the term “disturbance of peace” is of such common usage that it is defined in Black’s Law Dictionary (4th ed. 1951) as follows:

“Interruption of the peace, quiet, and good order of a neighborhood or community, particularly by unnecessary and distracting noises. [Citations omitted.]”

There is little, if any, difference between "disturbs the public peace" and "disturbance of the peace."

■ Thus the term "disturb the public peace" has taken on a definite meaning so that any law-abiding person of reasonable intelligence would or should have no difficulty in understanding what conduct is prohibited.

Basic law is concerned with constitutional rights of all people, not only the few. The right to peace and tranquility is also a constitutional right and is one of the purposes for which our constitution was adopted, as evidenced by the preamble, "to insure domestic tranquility."

■ The defendant in the instant case was arrested for sitting in the middle of an intersection, partially blocking traffic, which in itself constituted a violation of law (Section 24–12–02, N.D.C.C.) at two o'clock in the morning, making loud noises, and fighting with the police who tried to remove him. He knew or should have known that these actions would disturb the neighborhood and the peace. He cannot claim that because the statute uses the general term of disturbing the peace that he was not forewarned that his conduct was in violation of the law.

■ Where a common law offense statute is being challenged for vagueness, we rely upon the proven acts of the defendant rather than on speculative hypothetical facts or situations for the test. In this instance there is no doubt that the acts of the defendant disturbed the public peace.

### OVERBREADTH

Defendant claims that the statute is overbroad because it could be applied to conduct protected by the First Amendment. Defendant claims he has the right to attack the statute even though his own conduct does not fall within a constitutionally protected area.

■ The general rule is that a person to whom a statute may constitutionally be applied cannot challenge that statute on the ground that it may conceivably be applied unconstitutionally to others. *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1959); *State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749 (N.D.1966).

■ A litigant may assert only his own constitutional rights, unless he can present "weighty countervailing policies." *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *City of Bismarck v. Materi*, 177 N.W.2d 530 (N.D. 1970).

■ One exception where sufficient countervailing policies have been found is in the area of First Amendment rights. If the statute purports to regulate First Amendment rights, one who does not come within constitutional protection may nevertheless attack it. *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1966).

"Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick, supra*, 413 U.S. p. 612, 93 S.Ct. p. 2916.

This exception has been applied in cases involving statutes which, by their terms, seek to regulate speech, *Lewis v. New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); and where rights of association might have been affected by the broad sweep of the statute, *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *United States v. Robel*, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967).

■ The statute at issue here seeks only to proscribe conduct which "disturbs the peace," as defined by common law. It does not compete or contend with any First

Amendment rights. The language and intent of the statute are directed at regulating conduct and not speech. See *State v. Hipp*, Minn., 213 N.W.2d 610.

The United States Supreme Court, in *Broadrick v. Oklahoma, supra*, 413 U.S. at 615, 93 S.Ct. at 2917, said:

"But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive— falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. *Alderman v. United States*, 394 U.S. 165, 174–175, 89 S.Ct. 961, 966–967, 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that § 818 is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied."

The facts in this case show that the defendant's acts were not protected by the First Amendment. The State had the power to proscribe the conduct with which defendant was charged. The statute under which defendant was charged did not purport to regulate speech, but was intended to regulate conduct which threatens the public peace. Defendant has failed to show that the statute may have a chilling effect on other's First Amendment expressions. The defendant has totally failed to establish how or in what manner his First Amendment constitutional rights have been violated or dampened by the statutes and therefore has no standing to raise the claim that the statute may be applied overbroadly to others.

The judgment of the County Court of Increased Jurisdiction of Burleigh County is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and VOGEL, JJ., concur.