**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Deborah MOORE, Defendant and Appellant.**

**Cr. No. 682.**

Supreme Court of North Dakota.

Nov. 28, 1979.

Rehearing Denied Dec. 20, 1979.

Larry E. Stern, Asst. State's Atty., Fargo, for plaintiff and appellee.

Jonathan T. Garaas, Fargo, for defendant and appellant.

SAND, Justice.

Deborah Moore was convicted on 1 March 1979 of theft of property in violation of North Dakota Century Code Section 12.1–23–02. The precise charge was that Moore obtained property of another by receiving assistance from Cass County Social Services

Department to which she was not entitled in the amount greater than $100.00 between the period of September 1977 through March 1978. This was accomplished by her failure to notify the Cass County Social Services Department that her child, Corey, born 13 October 1974, was no longer living in her home during the period in question. Moore appealed her conviction. We affirm.

In the autumn of 1975, Deborah Moore separated from her husband and moved to North Dakota with her only child, Corey. While her divorce was pending, Moore applied for Aid to Families with Dependent Children [AFDC] at the Cass County social services center on 1 October 1975. Her application for AFDC assistance was processed in the usual manner which initially entailed an interview with an eligibility technician of the Cass County social services department wherein the program was explained to the applicant and the circumstances surrounding the application were ascertained. Based upon those circumstances, the eligibility technician determined whether or not Moore was eligible for assistance.

The eligibility application specifically required the listing of names of the children living with the applicant for whom assistance was asked, and accordingly Moore reported that Corey was residing with her as a member of her household. The application form also contained a certification and signature clause which read:

"State law provides for fine, imprisonment, or both for any person guilty of obtaining assistance to which he is not entitled by willfully withholding or giving false information. I certify that the information given by me on this form is correct and complete to the best of my knowledge. *I agree to inform the county welfare board within five days of any change in my family, address, or living arrangement which might affect my right to receive public assistance.* I further agree that if my case is selected for field review, my signature below constitutes my consent to obtain verifying information from any necessary source." [Underscoring ours.]

Moore signed and filed the application on 1 October 1975 and at that time also received a brochure explaining the AFDC programs. This brochure was not presented at the trial but a later publication was offered but not admitted into evidence.

Based upon the information in her application, Moore was declared eligible for AFDC benefits effective 1 November 1975, and began receiving assistance payments each month thereafter.

In mid-September of 1977, Moore placed Corey in the home of Mrs. Pat Simons, the child's aunt. Corey lived in the Simons home until the end of April 1978, and throughout that period of time Mrs. Simons was fully responsible for feeding, clothing, and caring for the child. Moore never visited Corey personally during this period, nor did she furnish Simons or Corey with any money for food, clothing, shelter, or support.

Recipients of AFDC are required to complete redetermination forms every six months to allow the eligibility technicians to review the recipient's eligibility, and on 15 November 1977 Moore signed and submitted a redetermination of eligibility form to the Cass County social services department. Moore, on the redetermination form, again listed Corey as living with her and in her household. This information was false, because at that time Corey was living in the home of his aunt, Mrs. Simons, who provided the child's maintenance and support.

The redetermination of eligibility form also contained a certification and signature clause which read almost identical to the one on the application form set out above. The application form contained the statement, "I agree to inform the county welfare board within five days . . ." whereas the redetermination form contained the statement, "I agree to inform the county social service board within five days . . ." Moore signed this form on 15 November 1977.

Moore knew, or should have known, from the application form she signed or from the

redetermination of eligibility form she signed that she was required to notify the welfare authorities of any change of circumstances which might affect her eligibility, including the absence from her home of the child for whom she was receiving assistance. The redetermination form instructions under "K. Dependent children (complete this section only if receiving in behalf of dependent children)" specifically stated, "List names of *children living with you* for whom you are receiving assistance." At no time during the period did Moore inform the Cass County social services department that Corey was no longer living in her household. Moore continued to receive and continued to cash the monthly AFDC benefit checks without turning over any amounts from the checks to Mrs. Simons or Corey throughout the period in which Corey was living with and supported by Mrs. Simons.

On 17 March 1978, Moore finally submitted a notice of change form to the Cass County social services department stating that Corey was no longer living as a member of her household. At that point the Cass County social services department determined that Moore was no longer entitled to receive AFDC benefits and the payments to her ceased.

Theft of property charges were thereafter filed against Moore by the Cass County state's attorney's office, alleging that she knowingly received the AFDC benefits for the period of time in which Corey was not living in her home by deceiving the Cass County social services department as to her eligibility. Moore was found guilty on 1 March 1979 and this appeal followed.

I

The first point raised by Moore in this appeal was that the statutes of the state of North Dakota nowhere specifically proscribe the conduct for which she was convicted. This challenge raises the constitutional issues of due process of law.

The Legislature of the state of North Dakota, except as limited by the state and federal constitutions and federal law, has unquestionable power to define what acts shall constitute criminal offenses and what penalties shall be imposed on offenders. So long as the legislative enactments do not infringe upon constitutional rights and privileges, expressly or necessarily implied, the legislature's will is absolute. *State v. Gronna*, 79 N.D. 673, 59 N.W.2d 514 (1953).

The 1973 North Dakota Legislature enacted a new criminal code, and consolidated the separate offenses of larceny, stealing, embezzlement, and obtaining property by false pretenses into the single crime of theft. Section 12.1–23–01, North Dakota Century Code. Deborah Moore was convicted of theft of property in violation of § 12.1–23–02, NDCC. The pertinent portion of that statute states:

"A person is guilty of theft if he:
"2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat;"

Moore contended that her failure to notify the Cass County social services department that Corey was not living in her home thus, making her ineligible to receive AFDC benefits was not within the purview of this, or any other, North Dakota statute. Section 50–09–23, NDCC, which was repealed in 1975 specifically provided a penalty for obtaining public welfare assistance by means of a willfully false statement or representation. Moore argued, therefore, there was no criminal statute under which she could be charged or convicted. Section 50–09–23, NDCC, however, was replaced with § 12.1–23–02, NDCC, under which Moore was charged.

This Court has said many times that the primary purpose of statutory construction is to ascertain the intent of the Legislature, and when that intent is directed toward an objective not prohibited by the state or federal constitutions, our construction of the legislation should be in aid of and compatible with this intent. *Hughes*

*v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975); *VanOrnum v. Otter Tail Power Company*, 210 N.W.2d 207 (N.D.1973); and *State v. Weigel*, 165 N.W.2d 695 (N.D.1969).

 A review of the legislative history surrounding the repeal of § 50–09–23, NDCC, discloses that the principal reasons for the repeal were to consolidate the various related provisions and to make all criminal penalties conform to the offense classification format contained in the new criminal code and to delete outmoded or unnecessary sections. The broad definition of theft in the new criminal code encompassed all of the former offenses wherein the property of one person was unlawfully taken. Report of the Legislative Council, Forty-Fourth Legislative Assembly, Judiciary "A" 1975.

At the Judiciary "A" Committee meeting on 25 October 1973, Attorney Robert Wefald was called on for a presentation of the proposed revision of criminal sections in Title 50. A discussion was held on § 50–09–23, NDCC, and Wefald noted that the section could be repealed because it was covered by the new criminal code. It was then moved, seconded, and carried that § 50–09–23 be repealed. North Dakota Legislative Council Minutes, Committee on Judiciary "A", 25 October 1973.

 We conclude that § 12.1–23–02, NDCC, is a consolidation of all theft-of-property offenses, and included obtaining AFDC assistance to which one was not entitled by willfully making false statements or representations as to eligibility. Therefore, the conduct of Moore was within the intended proscriptions of § 12.1–23–02 of the North Dakota criminal code.

We now consider the related issue of whether or not prosecution for wrongful receipt of AFDC benefits under that statute violates due process of law.

In a decision directed at the alleged vagueness of the North Dakota penal statute, this Court held, in *State v. Woodworth*, 234 N.W.2d 243, 245 (N.D.1975), that:

"The due process clauses of the State and Federal Constitutions require definiteness of criminal statutes so that the language, when measured by common understanding and practices, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to fairly administer the law. In determining whether adequate warning is given, the court should view the statute from the standpoint of the reasonable man who might be subject to its terms. *State v. Julson*, 202 N.W.2d 145 (N.D.1972); *State v. Hagge*, 211 N.W.2d 395 (N.D.1973); 21 Am.Jur.2d Criminal Law § 17, page 99."

We must therefore determine if Moore, as a reasonable person subjected to the terms of the theft of property statute here in question, had adequate warning of the proscribed conduct.

The State is aware that nowhere in the statutes or in the rules and regulations of the North Dakota social services board was there any provision which specifically stated that the child had to be living in the mother's home in order for the mother to receive assistance benefits. Nevertheless, the State contended that a reasonable interpretation of all the statutes, rules and regulations of the North Dakota social services board produce the inescapable result that in order for a person to qualify to receive AFDC payments, the child must be living in that person's home.

The AFDC program was originally established by the United States Social Security Act of 1935 to provide public welfare assistance to dependent children. The aid was to be furnished "to needy dependent children and the parents or relatives with whom they are living." 42 U.S.C. § 601 (1974). A "dependent child" was defined as an age-qualified "needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home or physical or mental incapacity of a parent, and who is living with [any one of numerous listed relatives], in a place of residence maintained by one or more of such relatives as his or their own home, . . . ." 42 U.S.C. § 606(a) (1974).

These statutes clearly establish that the child was the intended beneficiary under the AFDC, and, accordingly, it was the home in which that child was living which was to be evaluated for AFDC eligibility.

The rules and regulations promulgated by the social services board of North Dakota for AFDC also support this conclusion. These rules and regulations were duly filed in the Attorney General's office and with the clerk of district court and thus had the force and effect of law pursuant to § 28–32–03,[1] NDCC. The specific purpose of the North Dakota AFDC program was to "make it possible for the child's unmet economic needs to be provided." Rule 50–09–01,[2] Rules and Regulations for Social Services Boards of North Dakota for Aid to Families With Dependent Children [hereinafter cited as ND AFDC Regulations]. Rule 50–09–14(1),[3] Living in the home of relatives, stated "A dependent child, to be eligible for AFDC, must be living in the home of a relative by birth, marriage, or adoption." The "home" referred to above "is the family setting maintained, . . . as evidenced by the assumption and continuation of responsibility for the child by the parent or other relative." Rule 50–09–14(4),[4] ND AFDC Regulations. Further, an "assistance unit," is defined as the persons in a family whose entitlement to AFDC, is computed on the basis of combined need because they lived together and shared common housing. R 50–09–04,[5] ND AFDC Regulations.

These regulations clearly indicate, in line with the United States Code, that the home of the child was the crucial reference point and not the home of the parent. We would circumvent the very purpose of AFDC assistance if we were to look at the home of the child and the combined need of his home to determine eligibility, and then allow someone other than those responsible for the child to use the benefits for whatever purposes they wished.

An applicant for or recipient of AFDC assistance must, we believe, be aware that public assistance grants by their very nature depend upon such things as eligibility and need. When the applicant completes an application for assistance, it must be understood by the applicant that he is obligated to furnish the eligibility technician with truthful information regarding such eligibility factors as family economic need, total household income, the number of persons in the assistance unit, and the living arrangements of the applicant and her children. The same is true for AFDC recipients completing redetermination of eligibility forms. It is imperative, and we conclude that all AFDC applicants must understand that they must give the eligibility technician a truthful report of all conditions and circumstances surrounding the application for AFDC assistance. Anything else would defeat the very purpose of these programs.

1. Section 28–32–03, NDCC:

 "A copy of each rule and regulation promulgated and adopted by an administrative agency shall be filed in the office of the attorney general, and when thus filed, shall have the force and effect of law until amended or repealed by the agency or until the same is declared invalid by a final court decision. A copy of each rule and regulation prescribed by any administrative agency, and the attorney general's opinion thereon, shall be filed in the office of the clerk of the district court of each county in this state and shall be retained by such clerk of court for public inspection. A copy of each such rule and regulation, and the attorney general's opinion thereon, shall be mailed by the agency to the secretary of the state bar association. No fee shall be charged for the filing required by this section." [The place of filing was changed by S.L.1977, Ch. 286, § 1, but this change does not affect the legal impact of the rules and regulations here under consideration.]

2. This rule is now contained in the North Dakota Administrative Code and can be found at § 75–02–01–01(2)(b), N.D.Admin.Code, 1978.

3. This rule is now contained in the North Dakota Administrative Code and can be found at § 75–02–01–14(1), N.D.Admin.Code, 1978.

4. This rule is now contained in the North Dakota Administrative Code and can be found at § 75–02–01–14(4), N.D.Admin.Code, 1978.

5. This rule is now contained in the North Dakota Administrative Code and can be found at § 75–02–01–04, N.D.Admin.Code, 1978.

In this case, Moore was fully advised of the programs of assistance available to her and her child, and of her responsibility to report to the Cass County social services board any change in her family, address, or living arrangements which might affect her right to receive assistance. Moore was again advised of her responsibilities under the AFDC program at the time she submitted and signed her redetermination of eligibility form which contained false information regarding the place where Corey was living on 15 November 1977.

■ We can think of no reason why Moore justifiably, or even remotely, could have reasoned that she was entitled to any benefits under the program without the child. It was because the child was living with her that Moore qualified for benefits. The inescapable and undeniable fact is that the benefits were or are available because of a child. This is even indicated by the title of the Act and the name of the program.

■ Asking for and accepting funds for the benefit of a child and not using them for that purpose clearly violates the provisions of § 12.1–23–02, NDCC. To conclude otherwise would deny recognized principles of logic. The theft in this instance was from both the child and from the public funds. Merely because public funds are involved does not alter this basic logical concept. Abuse will also destroy the program. The mere fact that the law or regulations did not specifically point out or prohibit the various different means by which theft is prohibited does not make § 12.1–23–02 vague. It is no more vague than the statute which provides and makes it a crime to intentionally or knowingly cause the death of another human being without going into detail as to how death is accomplished, such as strangling, poisoning, shooting with different caliber bullets, etc.

Moore was informed both at the time of her initial application and again at the time she submitted her redetermination form that it was unlawful for her to give false information with regard to eligibility and that state law provided penalties for any person guilty of obtaining assistance to which he is not entitled by willfully withholding or giving false information.

Therefore, we conclude that Moore, as a reasonable person under the *Woodworth* standard, had adequate warning that her conduct in this matter would violate North Dakota state law. We find no due process violation by prosecuting this matter as theft of property under § 12.1–23–02, NDCC.

## II

The second point raised by Moore in this appeal was that she was deprived of due process of law when the trial court admitted State's Exhibit 7 into evidence.

At the time of trial, the State of North Dakota introduced, over objection, a document bearing the certification of Ben Meier as Secretary of State that the State Treasurer was the legal custodian of negotiated checks issued by the State Social Services Board. This certification bore the seal of the State of North Dakota. The document also contained an affidavit of Walter Christiansen stating that he was the North Dakota State Treasurer and that he had custody of the original checks issued to Deborah Moore during the months of November 1977 through March 1978.

Moore contended State's Exhibit 7 was inadmissible under Rules 901 and 902 of the North Dakota Rules of Evidence, was violative of the confrontation clause of the United States and North Dakota Constitutions, and lacked foundation. The trial court, after hearing extensive arguments by counsel for both Moore and the State, ruled that State Exhibit 7 was admissible under Rule 902(1), NDREv.

"RULE 901. Requirement of Authentication or Identification.

"(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

". . .

"(7) Public records of reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."

"RULE 902. Self-authentication.

"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

"(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any State, district, commonwealth, territory, or insular possession thereof, or of the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

"(2) Domestic public documents not under seal. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph (1), having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine."

Rule 902, NDREv, expands upon Rule 901 in that extrinsic evidence of authenticity as a condition precedent to admissibility is not required for public documents under seal. In the instant case, State's Exhibit 7, which was introduced, bore the seal of the State of North Dakota, and was certified by the signature of the North Dakota Secretary of State.

The document, Exhibit 7, certified to by the Secretary of State upon which the State's seal was placed also contained an affidavit of Walter Christiansen stating that he was the State Treasurer and was the custodian of the original checks issued to Moore beginning with the month of November 1977 through March 1978, and that facsimiles of those checks were attached. Moore also made an argument that the certification by the Secretary of State did not state who was the State Treasurer. The record reflects that the trial court stated that it could take judicial notice that Walter Christiansen was the State Treasurer. See Rule 201, NDREv.

 The purpose and concept of self-authentication rests upon the proposition that documents in which the risk of falsification is slight should be tendered and accepted as evidence of what they purport to be without the prior testimony of an authenticating witness. This "presumptive authenticity" in no way precludes any evidentiary challenge of the genuineness of the offered writing, but simply serves to obviate the necessity of preliminary authentication by the proponent to secure admission. See, McCormick on Evidence, 2d ed., § 228 (1972).

 Here, no discrediting evidence was offered by the defense to refute the authenticity of State's Exhibit 7, and because the State complied with the requirements of Rule 902(1), NDREv, we find no error in the trial court's admission of the document under that Rule.

We also point out that even if the document were not admissible under Rule 902(1), NDREv, it could have been received pursuant to Rule 27,[6] North Dakota Rules of Criminal Procedure, and Rule 44(a)(1),[7]

6. Rule 27, NDRCrimP: "An official record or an entry therein or the lack of such record or entry may be proved in the same manner as in civil actions."

7. Rule 44(a)(1), NDRCivP: "An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, or within the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal

North Dakota Rules of Civil Procedure. These rules set forth the requirements for proof of official records and copies of official records. This court has twice suggested that certified copies of State Toxicologist records could rightly have been offered into evidence in criminal proceedings for driving under the influence pursuant to Rule 44(a)(1), NDRCivP. *State v. Ghylin,* 222 N.W.2d 864 (N.D.1974); and *State v. Salhus,* 220 N.W 2d 852 (N.D.1974).

In this case, the originals of the checks issued to Deborah Moore were official records kept within the State of North Dakota and facsimile copies of them were attached to the affidavit of the State Treasurer, their legal custodian. The affidavit was properly accompanied by the sealed certification of the Secretary of State that the State Treasurer had such custody. Thus, the requisites of Rule 27, NDRCrimP, and Rule 44(a)(1), NDRCivP, were satisfied in this case and the documents could readily have been received into evidence under these rules.

Finally, Moore objected for the first time in her brief that State's Exhibit 7 was improperly admitted into evidence because it was hearsay and not within any permissible exception to the hearsay exclusionary rule. Rule 802,[8] NDREv.

■ One of the touchstones for an effective appeal on any issue is that the issue on appeal was first appropriately raised in the trial court so that the trial court could have ruled upon it. The reasons for this rule are obvious, for, if it were otherwise, it would behoove a defendant to sit by and invite error in the hope that if he did not prevail the first time, he would prevail upon appellate review of invited error. *State v. Bragg,* 221 N.W.2d 793 (N.D.1974); and

*State v. Haakenson,* 213 N.W.2d 394 (N.D. 1973). See also, *State v. Reaves,* 254 N.W.2d 488 (Iowa 1979).

In *Grenz v. Werre,* 129 N.W.2d 681 (N.D. 1964), this Court stated:

"It is elementary that an assignment of error in the admission of evidence will not be reviewed by this court unless proper and timely objection is made to the admissibility thereof, and that the admissibility of such evidence cannot be challenged for the first time upon appeal. *McLain v. Nurnberg,* 16 N.D. 144, 112 N.W. 243; *Grant v. Jacobs,* 76 N.D. 1, 32 N.W.2d 881; *Umphrey v. Deery,* 78 N.D. 211, 48 N.W.2d 897."

This ruling is in harmony with current Rule 103, NDREv, which provides that error may not be predicated upon a ruling which admits evidence involving a substantial right of the party affected unless a timely objection or motion to strike appear of record, stating the specific ground for objection, if the specific ground was not apparent from the context.

■ The record of the trial proceedings does not disclose that any objection was made to the trial court regarding the inadmissibility of Exhibit 7, the document in question on the ground that it was hearsay. Neither was such ground apparent from the context. We conclude that State's Exhibit 7 was properly admitted into evidence by the trial court, and that its admission did not violate the due process rights of Deborah Moore.

Based upon the foregoing conclusions of this court, the judgment of the trial court is affirmed.

custody of the record, or by his deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the

record is kept, authenticated by the seal of his office. A public officer having a seal may make such certificate with respect to records in his own custody."

8. Rule 802, NDREv: "Hearsay is not admissible except as provided by these rules, by other rules adopted by the North Dakota Supreme Court, or by statute."

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.