**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Stanley Trig TRANBY, Defendant and Appellant.**

**Cr. No. 880074.**

Supreme Court of North Dakota.

March 21, 1989.

Wayne D. Goter, argued, Asst. State's Atty., Mandan, for plaintiff and appellee.

Michael Ray Hoffman, argued, Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

Stanley Trig Tranby appeals from a judgment of conviction entered upon a jury verdict finding him guilty on two counts of negligent homicide under § 12.1–16–03, N.D.C.C., and from an order denying his alternative post-trial motions for judgment of acquittal and a new trial. We affirm.

On July 18, 1987, Tranby and Cindy Bauer, along with their two children, Melissa Bauer–Tranby, age 2 years, and Trevor Bauer, age 7 months, and Tranby's 9 year old son by a prior marriage, Patrick Balf-

our, were camping at the Sugar Loaf Bottoms campground and boat landing along the Missouri River in Morton County. It rained periodically all day and evening and the wind was blowing moderately. Temperatures ranged in the 60s° F. That morning at approximately 9 a.m., Tranby and Patrick went fishing on the Missouri River in Tranby's 14 foot aluminum Smokercraft boat which had a 15 horsepower motor. They returned to camp at approximately 12:30 p.m. for lunch. Tranby went fishing alone later in the afternoon at approximately 3:30 p.m. and did not return to camp until 8 p.m. that evening. The record reflects that Tranby had been drinking whiskey during the afternoon at the camp and that he had taken a whiskey bottle which was three-quarters full with him on the afternoon fishing trip. Tranby returned without the bottle and staggered as he got out of the boat.

Tranby testified that when he returned, Melissa and Patrick wanted a ride in the boat. It was decided that everyone would go for a ride and Patrick sat in the front of the boat, Cindy sat in the middle holding Trevor, and Melissa and Tranby sat in the rear, where Tranby operated the boat. A full bottle of whiskey and a bottle of wine were taken on the boat. Although five personal flotation devices, including one for an infant, were stowed on the boat, none of the occupants wore them.

At approximately 9:30 p.m., after an hour on the river and within sight of the campground, Tranby fell across the right side of the boat. Cindy grabbed his ankle and pulled to the other side of the boat in an attempt to even the balance. The rear corner of the boat had dropped below the water surface causing water to pour into the boat. Tranby told Cindy to take Melissa to the front of the boat. When Cindy attempted to move to the front, the boat capsized throwing everyone into the river. The water temperature was estimated to be 62° F at the surface and 40° F at the

bottom, with a relatively strong current at that location of 4 to 5 knots.

Cindy, who had hold of Trevor and Melissa, and Patrick clung to the side of the boat. Tranby managed to get on top of the capsized boat and took Trevor and Melissa from Cindy. The capsized boat drifted downstream until it hit a stationary log. The force knocked Tranby, with Trevor and Melissa, into the river and the current swept them further downstream. Patrick and Cindy, who continued to cling to the side of the boat, managed to dislodge it from the log. They floated downstream until the boat hit another log, and remained there until rescued the following morning.

Tranby testified that he and the two children floated downstream until he grabbed onto another log in the river. When he could no longer hold on to the log, he let go and they went under the water. Tranby lost grasp of Trevor and saw him drift downstream and go under the water again. Tranby then lost grasp of Melissa, but managed to grab hold of her and eventually reached the shore. Tranby attempted to revive Melissa, but could not. He carried her body approximately 1500 feet back toward the campground, set the body down by a tree, and arrived back at the campground at 3:15 a.m. Tranby summoned a neighboring camper, who gave him a ride to a telephone, and Tranby contacted authorities.

Law enforcement officers, who arrived between 4:30 and 5 a.m., testified that Tranby appeared to be under the influence of alcohol. The camper testified that when Tranby asked him for help, he did not smell the odor of alcohol. An expert on hypothermia testified that Tranby's confusion and slurred speech that morning could have been symptoms of hypothermia. Cindy and Patrick were rescued by the Morton County Dive Rescue Team, who also recovered Trevor's body. Tranby led law enforcement officers to Melissa's body. Autopsies revealed that both children had died from "dry drowning."[1]

---

1. Dr. John Hipp testified that "dry drowning" occurs when a person is submerged in water and asphyxiates by not taking a breath, thereby resulting in little or no water in the lungs. According to Dr. Hipp, this occurs most frequently with young children submerged in cold water.

On August 3, 1987, Tranby was charged with two counts of negligent homicide,[2] a class C felony, in violation of § 12.1–16–03, N.D.C.C. An amended criminal information alleged that the boating accident "was caused by defendant's negligent acts and omissions of failure to have [each child] wear a personal flotation device, operating his boat in adverse water and weather conditions, operating his boat in poor light, and operating his boat while under the influence of intoxicating liquor." The jury found Tranby guilty of both counts. Tranby filed a motion for "judgment of acquittal notwithstanding the verdict," and alternatively, moved for a new trial. Both motions were denied and Tranby was sentenced to serve two consecutive five-year terms at the State Penitentiary. Tranby appeals.

Tranby asserts that the allegation in the State's information that "failure to have [each child] wear a personal flotation device" is not a sufficient legal basis upon which to support a finding of criminal negligence; that the jury should have been charged in the conjunctive rather than the disjunctive regarding his alleged negligent acts and omissions; that the evidence was insufficient to support the verdict; that the trial court erred in denying his alternative motions for judgment of acquittal and new trial; and that the trial court erred in rejecting his challenge for cause of one prospective juror.

## I

Tranby asserts that his failure to place Trevor and Melissa in personal flotation devices [PFDs] could not properly be considered evidence of criminal negligence. He argues that construing the negligent homicide statute to require him to have each child wear a PFD violates his due process right to fair notice and warning of proscribed conduct because the applicable boat safety regulations[3] require only that boats be equipped with one approved PFD for each person aboard, and not that the PFDs be worn.

We are not persuaded by Tranby's argument. Although Tranby may have been technically in compliance with the boat safety regulation regarding PFDs, that compliance does not preclude his failure to place the children in the devices from being considered evidence of a violation of the negligent homicide statute. Conduct need not be specifically prohibited by a safety regulation or statute in order for it to be considered criminally negligent conduct. *See Turnipseed v. State*, 186 Ga. App. 278, 367 S.E.2d 259, 261 (1988) [absence of state law forbidding ownership of pitbull terriers or specifically outlawing any of defendant's isolated acts regarding the dogs did not preclude jury from finding him guilty of felony involuntary manslaughter based on underlying misdemeanor of reckless conduct]. Indeed, the gist of the crime of negligent homicide is an unintentional death caused by negligence in the commission of an act which is otherwise lawful in itself. *See generally* 40 C.J.S. *Homicide* § 62a (1944); 40 Am.Jur.2d

---

2. Cindy Bauer was granted immunity from prosecution and testified at trial.

3. Section 30–05–01–02(1), N.D.Adm.Code, which was promulgated under the authority provided by §§ 20.1–13–05(5) and 20.1–13–12, N.D.C.C., states in pertinent part:

"*30–05–01–02. Boat safety equipment.* The following equipment is required as indicated, and must be usable and in serviceable condition.

"1. *Personal flotation devices.* All motorboats less than sixteen feet [4.8 meters] in length and all nonpowered boats must have one coast guard approved type I, II, III, or IV device aboard for each person...."

We note that legislation is currently pending in the Fifty-first Legislative Assembly which would specifically require that personal flotation devices be worn by children on certain boats. Senate Bill No. 2314 provides:

"*SECTION 1.* A new section to chapter 20.-1–13 of the North Dakota Century Code is hereby created and enacted to read as follows:

"*Personal flotation devices.* It is unlawful for any person to operate or to be a passenger on any vessel less than twenty-seven feet [8.2296 meters] in length unless all persons, twelve years of age or younger present on the vessel, wear an appropriately sized and properly fastened coast guard-approved type I, II, or III wearable personal flotation device. A personal flotation device is appropriately sized if it is designed to be worn by a person of similar age, size, or weight as the wearer."

*Homicide* § 91 (1968); 2 Wharton's Criminal Law § 168 (14th Ed.1979).

 We are likewise unpersuaded by Tranby's related argument that, for purposes of the negligent homicide statute, the State has affirmatively established the acceptable standard of care with regard to the use of PFDs through its promulgation of the boat safety regulations. This court has essentially rejected the converse of that argument in civil negligence cases. We have repeatedly held that the violation of highway safety statutes is only evidence of negligence for the trier of fact to consider; it does not constitute negligence per se. *See Haider v. Finken,* 239 N.W.2d 508, 516 (N.D.1976), and cases cited therein. Implicit in these decisions is the recognition that safety statutes do not by themselves constitute a legislatively mandated standard of care applicable in civil negligence cases. Absent any legislative indication to the contrary, we decline to carve out an exception to this principle in criminal negligence cases.

 Tranby's due process challenge must therefore focus upon the provisions of the negligent homicide statute with which he was charged, rather than upon the boat safety regulations. We have said that the due process clauses of the state and federal constitutions require definiteness of criminal statutes so that the language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to fairly administer the law. *State v. Johnson,* 417 N.W.2d 365, 368 (N.D.1987). The void-for-vagueness doctrine therefore requires: (1) that the statute provide adequate warning as to the conduct proscribed; and (2) that the statute establish minimal guidelines to govern law enforcement. *State v. Johnson, supra.* In determining whether the meaning of a statute is fairly ascertainable or adequate warning is given, we must view the statute from the standpoint of the reasonable person who might be subject to its terms. *State v. Johnson, supra.*

 Section 12.1–16–03, N.D.C.C., provides that a person is guilty of negligent homicide "if he negligently causes the death of another human being." A person engages in conduct " '[n]egligently' if he engages in the conduct in unreasonable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct." § 12.1–02–02(1)(d), N.D.C.C. We have said that "[i]nadvertence to risk is the basis upon which condemnation for negligence proceeds, properly limited to cases where the actor is grossly insensitive to the interests and claims of other persons in society." *State v. Ohnstad,* 359 N.W.2d 827, 835 (N.D.1984).

 Measured under the applicable standards, we believe that the negligent homicide statute meets constitutional due process requirements. Merely because a law or regulation does not specifically point out or prohibit the various different means by which a crime is committed does not render a criminal statute unconstitutionally vague. *See State v. Moore,* 286 N.W.2d 274, 281 (N.D.1979), *cert. denied,* 446 U.S. 943, 100 S.Ct. 2170, 64 L.Ed.2d 799 (1980) [upholding § 12.1–23–02, N.D.C.C., defining theft of property]; *State v. Woodworth,* 234 N.W.2d 243, 245 (N.D.1975) [upholding disturbing public peace statute]. The language of the negligent homicide statute, when read together with the definition of "negligently," is sufficiently explicit to enable a reasonable person to determine what type of conduct renders him liable under the statute. *See State v. Hanson,* 256 N.W.2d 364, 367 (N.D.1977) [upholding § 12.1–17–03, N.D.C.C., defining reckless endangerment]; *State v. Hagge,* 211 N.W.2d 395, 398 (N.D.1973) [upholding former § 39–09–01, N.D.C.C., prohibiting certain types of driving].

We further believe that the boundaries of the proscribed conduct are sufficiently distinct for judges and juries to fairly administer the law. As this court said in *State v. Hanson, supra,* 256 N.W.2d at 367 "[t]he process by which a judge or a jury determines whether there has been a gross

deviation from acceptable standards of conduct ... is analogous to the process by which one determines whether there has been a deviation from the standard of reasonable care, a much-used legal test. The degree of deviation is different, ... [but] the process of determining whether a deviation from the standard occurred is the same." We conclude that the negligent homicide statute is not unconstitutionally vague.

Under all of the circumstances present in this case, Tranby's failure to place two infants, who could not swim, in PFDs could properly be considered by the jury as evidence of criminally negligent conduct.

## II

■ Tranby asserts that the trial court incorrectly instructed the jury regarding the essential elements of the offense of negligent homicide. The trial court, after general instructions on the law of negligent homicide which essentially tracked the provisions of §§ 12.1–16–03 and 12.1–02–02(1)(d), N.D.C.C., instructed the jury as follows:

### "ESSENTIAL ELEMENTS OF OFFENSE NEGLIGENT HOMICIDE

"With respect to the crime of Negligent Homicide, the burden resting upon the State is satisfied only if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged:

"(1) That on or about July 18, 1987, Stanley Trig Tranby engaged in the conduct charged in the Criminal Information, namely:

"(a) failed to have Trevor Bauer or Melissa Bauer Tranby wear a personal flotation device; or

"(b) operated his boat in adverse water and weather conditions; or

"(c) operated his boat in poor light; or

"(d) operated his boat while under the influence of intoxicating liquor; and

"(2) That any of such conduct was negligent in that it was in unreasonable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct; and

"(3) That the negligent conduct caused the deaths of Trevor Bauer or Melissa Bauer Tranby."

Tranby argues that because the criminal information charged the conduct set forth in subparagraphs (1)(a) through (1)(d) in the conjunctive, and because the State's subsequent bill of particulars alleged that the combination of these acts caused the death of the children, the trial court erred in refusing to give his requested instruction which was written in the conjunctive.[4] By

---

4. Tranby's requested instruction stated:

"With respect to Count I and the crime of Negligent Homicide, the burden of proof resting upon the State is satisfied only if the evidence shows beyond a reasonable doubt each and every of the following essential elements:

"(1) That on or about the 18th day of July, 1987, in Morton County, North Dakota, the defendant, Stanley Trig Tranby, caused the death of one Trevor Bauer, a human being; and

"(2) that defendant engaged in the conduct of failure to have Trevor Bauer wear a personal flotation device, operating his boat in adverse water and weather conditions, operating his boat in poor light, and operating his boat while under the influence of intoxicating liquor, which caused the death of said Trevor Bauer, in unreasonable disregard of a substantial likelihood of the existence of the rele-

vant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct.

"With respect to Count II and the crime of Negligent Homicide, the burden of proof resting upon the State is satisfied only if the evidence shows beyond a reasonable doubt each and every of the following essential elements:

"(1) That on or about the 18th day of July, 1987, in Morton County, North Dakota, the defendant, Stanley Trig Tranby, caused the death of one Melissa Bauer–Tranby, a human being; and

"(2) that defendant engaged in the conduct of failure to have Melissa Bauer–Tranby wear a personal flotation device, operating his boat in adverse water and weather conditions, operating his boat in poor light, and operating his boat while under the influence of intoxicating liquor, which caused the death of said

instructing the jury in the disjunctive, Tranby asserts, the trial court "changed the nature of the offense as alleged" in the information and violated his "Sixth Amendment right to be informed of the nature and cause of the accusation against him." In essence, Tranby's contention appears to be that the State was required to prove each factual averment in the information beyond a reasonable doubt and that the trial court's instruction in the disjunctive improperly relieved the State of this burden.

We have consistently held that the State is not required to prove beyond a reasonable doubt each and every factual allegation set forth in the criminal complaint. Rather, the State is only required to prove beyond a reasonable doubt the elements of the offense charged. *See State v. Hatch,* 346 N.W.2d 268, 275–276 (N.D.1984); *State v. Knoefler,* 325 N.W.2d 192, 198 (N.D.1982); *State v. Bohl,* 317 N.W.2d 790, 792 (N.D.1982). Here the State was required to prove beyond a reasonable doubt that Tranby caused the deaths of the children by engaging in conduct in unreasonable disregard of a substantial likelihood of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct. Tranby cannot seriously argue that he was not adequately informed about the nature of the charge against him. The State's criminal information and subsequent bill of particulars set forth detailed factual descriptions of the conduct the State intended to establish and rely upon at the trial.

Nor are we persuaded by Tranby's argument that the trial court's instructions, phrased in the disjunctive, somehow "changed the nature of the offense as alleged" by allowing the jury to convict him if it found only one of the instances of conduct described in subparagraphs (1)(a) through (1)(d) to have been proven. Tranby's argument ignores paragraph (2) of the instruction which defines negligent conduct. Although the factual allegations are listed in the disjunctive, paragraph (2) required the jury to consider whether such conduct was negligent "in that it was in unreasonable disregard of a substantial likelihood of *the existence of the relevant facts or risks.* ..." [Emphasis added.] The instruction given therefore required the jury to consider all of the conduct alleged in subparagraphs (1)(a) through (1)(d) because the additional conduct constituted the "relevant facts or risks" required to be considered by the jury under paragraph (2) in determining whether Tranby's actions were criminally negligent. The instruction did not allow the jury to find Tranby guilty by considering each alleged specific instance of conduct in a vacuum, but rather allowed the jury to consider all of Tranby's alleged conduct in arriving at its verdict.

We conclude that the trial court's instructions, as a whole, correctly and adequately advised the jury on the law of negligent homicide. *See State v. White,* 390 N.W.2d 43, 45 (N.D.1986).

### III

Tranby asserts that the evidence was insufficient to sustain the jury verdict. We disagree.

In challenging the sufficiency of the evidence on appeal, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *State v. Jacobson,* 419 N.W.2d 899, 901 (N.D.1988). Because the jury is the sole judge of the credibility of witnesses, this

Melissa Bauer–Tranby, in unreasonable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct, and that the aforesaid conduct of defendant caused the death of Melissa Bauer–Tranby, a human being."

We note that during jury deliberations, the jury foreman sent the following question to the trial judge: "Does the Defendant have to be negligent on all charges underlined or just one." Attached to the note was a copy of the amended information in which the factual averments set forth in subparagraphs (1)(a) through (1)(d) were underscored. The trial judge's answer to the question was that "[t]he instruction on page 5 [the challenged instruction] should answer your question. Defendant must be negligent in one or more of the particulars alleged."

court must assume that the jury believed the evidence which supports the verdict and disbelieved any contrary or conflicting evidence. *State v. Manke*, 328 N.W.2d 799, 805–806 (N.D.1982).

The record contains evidence from which the jury could have found that Tranby, while intoxicated, took four members of his family out on the river in a small, relatively unstable boat when it was nearing darkness and there was a relatively strong current and adverse weather conditions. Two of his passengers were infants who could not swim and Tranby did not place them in PFDs. The boat eventually capsized due in large part to Tranby's actions. We believe that these circumstances could properly have been found to constitute conduct reflecting a gross deviation from acceptable standards, and that this conduct was the cause of the children's deaths. We conclude that the evidence is sufficient to support the verdict.

## IV

Tranby asserts that the trial court erred in failing to grant his alternative post-trial motions for "judgment of acquittal notwithstanding the verdict" and new trial. Inasmuch as Rule 29(c), N.D.R.Crim.P., "does not permit a motion for judgment of acquittal after the jury returns a verdict of guilty" [Explanatory Note to Rule 29, N.D. R.Crim.P., North Dakota Court Rules, at p. 303 (West 1988) ], we limit our discussion to whether or not the trial court erred in refusing to grant Tranby's request for a new trial.

 A trial court may grant a new trial if it concludes that a guilty verdict is against the weight of the evidence. *State v. Kringstad*, 353 N.W.2d 302, 307 (N.D. 1984). In ruling on a motion for new trial, the trial court may, within limits, weigh the evidence and evaluate for itself the credibility of the witness. *State v. Kringstad, supra*, 353 N.W.2d at 306. However, a motion for a new trial is committed to the sound discretion of the trial court and its judgment is conclusive unless we can say that, in denying the motion, such judgment was abused. *State v. Kringstad, supra*,

353 N.W.2d at 307. The record in this case does not establish that the trial court abused its discretion in denying Tranby's motion.

## V

 Tranby asserts that his Sixth Amendment right to a trial by an impartial jury was denied when the trial court overruled his challenge for cause to a prospective juror. Tranby then exercised a peremptory challenge to remove that prospective juror. Although Tranby exhausted his peremptory challenges [*see State v. McLain*, 301 N.W.2d 616, 622 (N.D.1981) ], he does not claim on appeal that any of the jurors who sat in the case were not impartial. Under these circumstances, even assuming the trial court erred in overruling his challenge for cause to the prospective juror, Tranby's Sixth Amendment rights were not violated.

In *Ross v. Oklahoma*, —— U.S. ——, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), the United States Supreme Court held that, even though the trial court had erroneously failed to accept a challenge for cause to a prospective juror, the defendant's Sixth and Fourteenth Amendment rights to a fair and impartial jury were not violated where the defendant was able to exercise a peremptory challenge to remove the challenged juror. The Supreme Court reasoned:

"Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. *Gray* [*v. Mississippi* ], *supra*, [481 U.S. 648] at 664–665, 107 S.Ct., at [2045] 2054 [, 95 L.Ed.2d 622] [ (1987) ]; *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154 (1919). They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the

defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. See *Hopt v. Utah*, 120 U.S. 430, 436, 7 S.Ct. 614, 616, 30 L.Ed. 708 (1887); *Spies v. Illinois*, 123 U.S. 131, 8 S.Ct. 21, 22, 31 L.Ed. 80 (1887). We conclude that no violation of petitioner's right to an impartial jury occurred." *Ross v. Oklahoma*, *supra*, — U.S. at —, 108 S.Ct. at 2278 (Footnote omitted).

In this case, Tranby removed the prospective juror from the jury with a peremptory challenge. Tranby does not claim on appeal that any of the jurors who did sit during the trial were not impartial. We therefore conclude that Tranby's right to a fair and impartial jury was not violated.

Accordingly, the judgment of conviction and the order denying Tranby's post-trial motions are affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.