**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Jason WINGERTER, Defendant and Appellant.**

**Cr. No. 901.**

Supreme Court of North Dakota.

May 26, 1983.

Charles J. Gilje, State's Atty., Jamestown, for plaintiff and appellee.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant; argued by William A. Mackenzie, Jamestown.

SAND, Justice.

Jason Wingerter appealed from a judgment of conviction for escape, a class C

---

felony, in violation of North Dakota Century Code § 12.1–08–06.

In November or December of 1981 the Burleigh County State's Attorney's office received a report that Wingerter had thrown a tire iron through a residential window in Bismarck, North Dakota. At the time the report was investigated, Wingerter was receiving mental health treatment at St. Alexius Hospital in Bismarck. According to a Burleigh County assistant state's attorney a very strong case for criminal prosecution existed, but because of Wingerter's conduct, the assistant state's attorney suggested that the police officers file a petition for civil commitment rather than proceed with a criminal prosecution. A petition for involuntary commitment, pursuant to NDCC ch. 25–03.1 was filed, and after a hearing, an order for hospitalization was issued by the Burleigh County Court on 23 December 1981, and Wingerter was committed to the North Dakota State Hospital in Jamestown.

On 10 March 1982 Wingerter used physical force and left the State Hospital. A criminal complaint was filed on 19 March 1982 charging Wingerter with felony escape. After a court trial, Wingerter was found guilty of escape, a class C felony, and received a deferred imposition of sentence with two years' probation. Wingerter appealed.

On appeal, Wingerter contended that he was not in "official detention" as defined by NDCC § 12.1–08–06(3)(a) while he was in the State Hospital, and, therefore, could not be charged with escape pursuant to NDCC § 12.1–08–06(1).

NDCC § 12.1–08–06 provides, in part, as follows:

"1. A person is guilty of escape if, without lawful authority, he removes or attempts to remove himself from official detention or fails to return to official detention following temporary leave granted for a specified purpose or limited period.

. . . . .

"3. In this section:

a. 'Official detention' means arrest, custody following surrender in lieu of arrest, detention in any facility for custody of persons under charge or conviction of an offense or alleged or found to be delinquent, *detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while criminal proceedings are held in abeyance,* detention for extradition, or custody for purposes incident to the foregoing, including transportation, medical diagnosis or treatment, court appearances, work, and recreation, but 'official detention' does not include supervision or probation or parole or constraint incidental to release." [Emphasis added.]

The State contended that the testimony of the assistant Burleigh County state's attorney at the trial on the escape charge was sufficient to establish that Wingerter was civilly committed in lieu of criminal proceedings and, therefore, was in "official detention".[1]

Wingerter contended that he was not in "official detention" because no criminal charge was filed relating to the tire iron

---

1. The testimony of the assistant state's attorney provides as follows:

"Q. Tell us, if you would, about what it was that the charge that was considered and the decision-making process in deciding to try for commitment to the State Hospital.

"A. I had received a report that Mr. Wingerter had committed the crime of criminal mischief in that he had thrown a tire iron through the window of a young woman he fancied himself to be in love with. At the time, the report was investigated, and Mr. Wingerter was at St. Alexius Hospital in Bismarck receiving some mental health treatment.

"The reports I got indicated that police officers talked to him there and I felt we had a very strong case for criminal prosecution and I was certain we could have prevailed.

"My major concern at that time, however, was that—the defendant's conduct, that type of conduct, we were hoping he would somehow be helped to get some better judgment and to be better able to control his activities so, for that reason, I suggested that police officers file papers for civil commitment rath-

incident in Burleigh County, nothing in the commitment papers indicated he was committed in lieu of criminal proceedings or that a criminal charge was held in abeyance, and nothing was in the medical records at the State Hospital indicating that he was committed as a result of alleged criminal conduct.[2] Wingerter essentially contended that, in order for him to be in "official detention," some documentation had to exist showing that he was civilly committed in lieu of criminal proceedings or that criminal proceedings were held in abeyance. We agree.

Rudimentary concepts of due process entail various suppositions, one of which is that all persons are entitled to notice of what the State commands or forbids. *See, Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *State v. Woodworth,* 234 N.W.2d 243 (N.D.1975). Interrelated with this concept are two time-honored legal principles that a person is presumed innocent until proven guilty, and that proof of guilt must be established beyond a reasonable doubt. These concepts and principles, in part, protect our society from arbitrary and capricious enforcement of criminal statutes and provide a foundation for several procedural safeguards entrenched in our criminal justice system.

An individual may not ordinarily be subjected to the criminal process without the safeguards provided by the intervention of a court, or magistrate, or other similar body. Examples of these safeguards are that warrants are not issued except by a neutral and detached magistrate upon probable cause, and that certain offenses necessitate a preliminary hearing at which time a determination must be made that probable cause exists to believe an offense was committed and the accused committed the of-

fense. Additionally, if a person is arrested without a warrant, a complaint stating the charge must be made before a magistrate without unnecessary delay. NDCC §§ 29-06-23, 29-06-25. These examples support the conclusion that a determination by a court in the early stages of a criminal proceedings is an integral part of the criminal justice system. Other examples of court intervention include, but are not limited to, the acceptance of a plea agreement by a court, and the granting of immunity (with approval of the attorney general) by a court. The prime reason these examples are procedural safeguards is because they involve a determination by a court.

The definition of "official detention" in NDCC § 12.1-08-06(3)(a) sets forth situations which implement and require some of the procedural safeguards mentioned earlier herein. For example, an arrest may be pursuant to a warrant issued by a magistrate or, if without a warrant, then a complaint must be made before a magistrate without unnecessary delay. The other situations set forth in that definition require some type of court intervention or consent by the defendant or accused.

 The principle of law upon which our criminal justice system rests and a comparison and examination of the situations in the definition of "official detention" lead us to conclude that, at the very minimum, a determination by a court is necessary that a civil commitment is in lieu of a criminal proceeding or that the civil commitment is while the criminal charges are held in abeyance. This necessarily implies that criminal proceedings be initiated and that a court determine that the criminal proceedings be held in abeyance or that the civil commitment be in lieu of the initiated criminal proceedings. Furthermore, a defendant's right to a speedy trial also implies that the

---

er than proceeding with a criminal prosecution.

. . . . .

"Q. A decision was made by you that in lieu of prosecution to seek commitment under the law that allows for that?
"A. That is correct.
"Q. Was there any holding in abeyance of the criminal charge? If the civil commitment

did not work out would you at a later time consider a criminal charge?
"A. That would be possible. Our major concern was to stop that type of conduct on Mr. Wingerter's part."

2. Wingerter conceded that he could have been charged with criminal mischief under NDCC § 12.1-21-05(1)(b) for the incident in Burleigh County.

defendant must consent to the civil commitment proceedings rather than continuing the criminal proceedings. The initial court involvement will eliminate the possibility of arbitrary prosecutions for escape.[3]

We also believe that considerable doubt would be eliminated if the Legislature were

to enact a statute specifically authorizing civil commitment in lieu of criminal proceedings or authorizing civil commitment while criminal proceedings are held in abeyance.[4]

Because the instant case does not satisfy the basic requirement, i.e., that there be a

---

3. Nothing in this opinion should be read to imply or suggest arbitrary conduct in the instant case.

4. The North Dakota provision dealing with escape was adopted from the proposed Federal Criminal Code. Nothing in the legislative history dealing with NDCC § 12.1–08–06 suggests that the Legislature considered adopting a law authorizing civil commitment in lieu of criminal proceedings or while criminal proceedings were held in abeyance. We note that 28 USCS § 2902 provides such a provision for narcotic rehabilitation and provides that if the person escapes while committed to institutional custody, the escape penalties in 18 USCS §§ 751, 752 shall apply.

28 USCS § 2902 provides as follows:

"(a) If the United States district court believes that an eligible individual is an addict, the court may advise him at his first appearance or thereafter at the sole discretion of the court that the prosecution of the criminal charge will be in abeyance if he elects to submit to an immediate examination to determine whether he is an addict and is likely to be rehabilitated through treatment. In offering an individual an election, the court shall advise him that if he elects to be examined, he will be confined during the examination for a period not to exceed sixty days; that if he is determined to be an addict who is likely to be rehabilitated, he will be civilly committed to the Surgeon General for treatment; that he may not voluntarily withdraw from the examination or any treatment which may follow: that the treatment may last for thirty-six months; that during treatment, he will be confined in an institution and, at the discretion of the Surgeon General, he may be conditionally released for supervised aftercare treatment in the community; and that if he successfully completes treatment the charge will be dismissed, but if he does not, prosecution on the charge will be resumed. An individual upon being advised that he may elect to submit to an examination shall be permitted a maximum of five days within which to make his election. Except on a showing that a timely election could not have been made, an individual shall be barred from an election after the prescribed period. An individual who elects civil commitment shall be placed in the custody

of the Attorney General or the Surgeon General, as the court directs, for an examination by the Surgeon General during a period not to exceed thirty days. This period may, upon notice to the court and the appropriate United States attorney, be extended by the Surgeon General for an additional thirty days.

"(b) The Surgeon General shall report to the court the results of the examination and recommend whether the individual should be civilly committed. A copy of the report shall be made available to the individual and the United States attorney. If the court, acting on the report and other information coming to its attention, determines that the individual is not an addict or is an addict not likely to be rehabilitated through treatment, the individual shall be held to answer the abeyant charge. If the court determines that the individual is an addict and is likely to be rehabilitated through treatment, the court shall commit him to the custody of the Surgeon General for treatment, except that no individual shall be committed under this chapter [28 USCS §§ 2901 et seq.] if the Surgeon General certifies that adequate facilities or personnel for treatment are unavailable.

"(c) Whenever an individual is committed to the custody of the Surgeon General for treatment under this chapter [28 USCS §§ 2901 et seq.] the criminal charge against him shall be continued without final disposition and shall be dismissed if the Surgeon General certifies to the court that the individual has successfully completed the treatment program. On receipt of such certification, the court shall discharge the individual from custody and dismiss the charge against him. If prior to such certification the Surgeon General determines that the individual cannot be further treated as a medical problem, he shall advise the court. The court shall thereupon terminate the commitment, and the pending criminal proceeding shall be resumed.

"(d) An individual committed for examination or treatment shall not be released on bail or on his own recognizance.

"(e) Whoever escapes or attempts to escape while committed to institutional custody for examination or treatment, or whoever rescues or attempts to rescue or instigates, aids or assists the escape or attempt to es-

court determination that the civil commitment is in lieu of criminal proceedings or while criminal proceedings are held in abeyance, we conclude the criminal conviction must be reversed.

Because of our resolution of this issue, we need not consider the issues whether or not a statute must exist authorizing civil commitment in lieu of criminal proceedings or authorizing detention while criminal proceedings are held in abeyance before such procedure may be used, or the due process or equal protection arguments raised by Wingerter.

The judgment is reversed.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.

cape of such a person, shall be subject to the penalties provided in sections 751 and 752 of

title 18, United States Code [18 USCS §§ 751, 752]."