**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Konrad HOUSER, Defendant and Appellant.**

**Cr. No. 607.**

Supreme Court of North Dakota.

Dec. 19, 1977.

Thomas Tuntland, Asst. State's Atty., Mandan, for plaintiff and appellee.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendant and appellant; argued by Irvin B. Nodland, Bismarck.

SAND, Justice.

A Morton County district court jury found the defendant guilty of gross sexual imposition in violation of § 12.1–20–03, North Dakota Century Code, and of felonious restraint in violation of § 12.1–18–02(2), NDCC. The court issued its judgment of conviction and sentenced the defendant to a term of seven years in the North Dakota State Penitentiary for gross sexual imposition and five years for felonious restraint, with both terms running concurrently.

The defendant appealed from the judgment of conviction contending that the trial court erred by failing to instruct the jury on the requested lesser included offenses of sexual assault, and unlawful restraint,[1] both misdemeanors and violation of §§ 12.-1–20–07 and 12.1–18–03, NDCC, respectively.

The complaining witness, Toni, as is pertinent to the issues, testified that she was a freshman at Dickinson State College, she casually met the defendant at the Paragon Bowling Alley in Dickinson during the early morning hours of 25 February 1977, and she had just purchased a ticket to Mandan, where her parents reside.

In a conversation with the defendant she discovered that she had gone to school with his sister in Mandan. The defendant several times offered her a ride to Mandan, which she ultimately accepted, "I guess because I thought I could save a bus ticket, and he seemed like he was okay."

Toni further testified that she cashed in her bus ticket, after which they left in defendant's car, later stopping at a gas station for a bottle of coke to mix with the whiskey which he had in his car. After the defendant resumed driving he asked her to make two drinks, which she did, and they talked about a number of things. The defendant's attitude changed as they neared Hebron, about thirty miles from Dickinson. He kept talking about the "union," started to drive fast, and then asked her "if I [she] had ever made love to a married man before." He also asked what she thought of making love to him, to which she did not answer but started talking about something else. Shortly thereafter, the defendant took the Hebron exit, drove down a road for half a mile and backed his car into a ditch, at which point she asked to get out of the car, but the defendant would not allow her out because "The union wouldn't allow it, so I couldn't."

She also testified that the defendant then crawled into the back seat and demanded that she also get into the back seat. When she said "no way," the defendant knocked away her cigarette and pulled her into the back seat, bruising her arms. (Pictures of bruises on her arms were introduced and received in evidence.) She tried to stop the defendant when he grabbed her shoulders, pushed her down and began removing her clothing. In the struggle she hit her head against the car, after which she stopped resisting and permitted him to have intercourse because she was too scared. (Both the complainant and the defendant testified that they had sexual intercourse. This fact was also stipulated to in writing.) She testified that she asked the defendant to stop and told him that what he was doing was rape.

After this incident, the defendant drove back onto the Interstate in the direction of Mandan. He again left the Interstate at the Judson exit, at which point she asked to get out of the car. The defendant again referred to the "union" and drove at excessive speeds on a gravel road. During this time she said she repeatedly asked to get out of the car. The ride ended when the defendant missed a curve in the road, and the car, traveling at approximately seventy miles per hour, went into a ditch, through a fence, hit a steel post, went into a field and hit another steel post, where it stopped.

She and the defendant then walked to a farmhouse where the police were summoned. At this time she made a statement regarding the offense of felonious restraint, but waited until after she had returned to college and discussed the matter with her roommate which was three days later, to report the offense of gross sexual imposition.

The defendant's testimony differed sharply from Toni's. The defendant testified that he asked Toni if she wanted to make love and she said yes, so he drove off the Interstate onto a road leading to Glen Ullin and parked the car. They had sexual intercourse and afterwards smoked ciga-

---

1. The headnote states "unlawful imprisonment," but does not constitute a part of the statute. § 1–02–12, NDCC.

rettes. She never asked to get out of the car, nor did she discourage his sexual advances. He did not remember leaving the Interstate and going off the road, but he did say that he remembered turning around in a field and getting stuck.

Prior to defendant's trial, the court directed the attorneys to submit all jury instructions before the trial began. Both the State and the defendant submitted jury instructions at this time. However, at the close of the evidence the defendant requested additional instructions including instructions on the lesser included offenses of sexual assault, on restraint, and on intoxication. This was the first time the State and the court had notice of defendant's additional requested jury instructions.

The court gave the instruction on intoxication for the defendant, and it also gave the State's requested instruction on "recklessly," in response to the defendant's instruction. The court refused to give the instructions on the lesser included offenses of sexual assault, and restraint, and wrote across the bottom of each instruction:

"Refused as submitted late contrary to Court order and because it has no basis in the evidence."

Initially, we observe that the need for orderly procedure, including conservation of time in jury trials, is self-evident.

To accomplish this and to give the trial court an opportunity to evaluate the requested instructions they should be furnished timely (to the trial court) in writing so that the court, if it decides to give them, can interrelate them with the other instructions to make them intelligible, coherent, and accurate. This may be accomplished by various methods, including, but not limited to, the submission of requested instructions at the time specified by the court with the reservation that they may be withdrawn at the close of the evidence.

We note that Rule 30, North Dakota Rules of Criminal Procedure, provides that the written request for jury instructions may be made "At the close of the evidence or at such earlier time during the trial as the court reasonably directs . . . ."

While the time specified by the trial court for the submission of instructions will be given strong support, we are not prepared to conclude that instructions may be refused solely because they were tardily submitted. *State v. Barry*, 11 N.D. 428, 92 N.W. 809 (1902). In the instant case the refusal was based on two grounds: (1) no basis in the evidence and (2) submitted too late (after the time specified by the court). However, we note that the trial court gave defendant's "tardy" instruction on intoxication but at the same time refused to give the requested instruction on the lesser included offenses. This in our view establishes that the trial court relied upon the "no basis in the evidence" ground rather than on the tardiness for refusing to give the lesser included offenses instruction.

In *Keeble v. United States*, 412 U.S. 205, 213, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973), the United States Supreme Court said:

". . . we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense . . . ."

Also, on page 208, 93 S.Ct. on page 1995, the Court said:

". . . the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."

The North Dakota independent evidence test is in harmony with this principle of law.

The Supreme Court of the State of Wisconsin, in *Hughes v. State*, 55 Wis.2d 477, 198 N.W.2d 348, 350 (1970), stated:

"The early cases point out and emphasize and we must stress again, because the question keeps recurring, that a determination of whether an instruction on a lesser included crime should be given to a jury is not solved by merely determining the crime charged includes the lesser offense because juries are not to be given the discretion or freedom to pick and

choose what offense the accused should be found guilty of. [Citation omitted.] The evidence must throw doubt upon the greater offense. Juries cannot rightly convict of the lesser offense merely from sympathy or for the purpose of reaching an agreement. They are bound by the evidence and should be limited to those included crimes which a reasonable view of the evidence will sustain and does not convince beyond a reasonable doubt the additional element of the greater crime existed." [*State v. Melvin*, 49 Wis.2d 246, 253, 181 N.W.2d 490, 494 (1970).]

This Court on previous occasions has applied the independent evidence test to determine if a jury instruction on the lesser included offense is required. See *State v. Piper*, 261 N.W.2d 650 (N.D.1977); *State v. Ankney*, 195 N.W.2d 547 (N.D.1972); *State v. Tucker*, 58 N.D. 82, 224 N.W. 878, 884 (1929).

In *Piper* we, in substance, said that the test is not whether or not the lesser included offense was committed in perpetration of the greater offense but rather whether or not there is evidence which will create a reasonable doubt as to the greater offense and support a conviction of the lesser included offense beyond a reasonable doubt.

▆ In the instant case, the parties stipulated that the complaining witness and the defendant had sexual intercourse. Thus where the act of sexual intercourse actually took place there is really no justification for the inclusion of the lesser included offense of sexual assault. The evidence in this case either supports a verdict of guilty on the charge of gross sexual imposition, the greater offense, or not guilty. The only real factual issue to be decided by the jury was whether or not the defendant compelled the complainant to have sexual intercourse by force, or in the alternative whether or not the complainant willingly consented to have sexual intercourse with the defendant. If the evidence will rationally permit the jury to make only a finding of guilty or not guilty, there is no justification for the court to instruct on a lesser included offense. See *Piper, Ankney,* and *Tucker,*

*supra; State v. Sanders,* 14 N.D. 203, 103 N.W. 419 (1905); and *State v. DeBerry,* 190 Neb. 177, 206 N.W.2d 642 (1973).

▆ In this case an instruction on sexual assault is not warranted because the evidence only supports a gross sexual imposition if the complainant is believed, and no crime if the defendant's version is accepted and believed.

The defendant has also contended that the trial court committed reversible error by failing to instruct the jury on the lesser included offense of unlawful restraint.

Section 12.1–18–02(2), NDCC, states that a person is guilty of felonious restraint if he "knowingly restrains another under terrorizing circumstances or under circumstances exposing him to risk of serious bodily injury." Section 12.1–18–03, NDCC, provides that "a person is guilty of a class A misdemeanor if he knowingly subjects another to unlawful restraint."

The definition of restraint, applicable to both these sections, is found at § 12.1–18–04:

" 'Restrain' means to restrict the movement of a person unlawfully and without consent, so as to interfere substantially with his liberty by removing him from his place of residence or business, by moving him a substantial distance from one place to another, or by confining him for a substantial period. Restraint is 'without consent' if it is accomplished by: a. force, intimidation, or deception . . . ."

Toni testified that the defendant passed a semi-truck several times, each time stepping on the brakes after passing so that the semi would have to swerve to avoid hitting them. She also said that he drove on the shoulder of the road. When he left the Interstate at the Judson exit, Toni said she repeatedly told him that she wanted to get out of the car.

Toni testified that the car was sliding across the gravel road and that she looked at the speedometer of the car which showed 70 miles per hour. She said that the defendant knew he was going to miss a curve in the road because he told her "that I had

better lay low because there is a curve and he wasn't going to make it, he wouldn't be able to turn."

The defendant was questioned by his attorney as to these facts:

"Q There has been testimony that you were driving recklessly or wildly. Do you have any reason to dispute that?

"A I usually drive fast.

"Q Possibly you were playing games with a semi-truck?

"A It's possible.

"Q Do you remember it?

"A No.

"Q Do you remember going off the highway and nearly clipping posts along the highway?

"A No.

"Q You don't remember that?

"A No.

"Q Is it possible that you may have been?

"A It's possible. Going, I don't remember talking very much going down that stretch of highway, just—she was sleeping, and I don't know, I was listening to the radio."

In view of the evidence, we have determined that the trial court did not err by failing to instruct on the lesser included offense of restraint or unlawful imprisonment. The Eighth Circuit Court of Appeals, in *United States v. Thompson*, 492 F.2d 359, 362 (1974), outlined a five-part test to determine when a defendant is entitled to an instruction on a lesser included offense:

"(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i. e., a charge may be demanded by either the prosecution or defense."

Applying this test, we find that the proof on the elements differentiating the two offenses is not sufficiently in dispute to permit the jury to consistently find the defendant innocent of felonious restraint and guilty of restraint or unlawful imprisonment. The defendant could not remember what happened. The complainant testified as to facts showing terrorizing circumstances, and circumstances exposing her to risk of serious bodily injury as prohibited by § 12.1–18–02(2), NDCC.

For the reasons stated earlier herein, we affirm the trial court's judgment of conviction of felonious restraint and gross sexual imposition.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.