STATE of North Dakota, Plaintiff and Appellee,

v.

Garry Lee HAGSTROM, Defendant and Appellant.

Crim. No. 658.

Supreme Court of North Dakota.

Jan. 8, 1979.

Benjamin C. Pulkrabek, Mandan, for defendant and appellant.

Rolf P. Sletten, Asst. State's Atty., Burleigh County, Bismarck, for plaintiff and appellee.

PAULSON, Justice.

Defendant, Garry Lee Hagstrom [hereinafter Hagstrom], appeals from a judgment of conviction in the County Court of Increased Jurisdiction of Burleigh County on a charge of operating a motor vehicle while his driver's license was suspended.

We affirm.

The facts are as follows: Mr. Hagstrom was operating his motor vehicle on State Highway 83, south of the City of Wilton, Burleigh County, North Dakota, on May 19, 1978. State Highway Patrolman, James M. Hughes [hereinafter Hughes], was patrolling Highway 83 and, with the assistance of radar, clocked Hagstrom as traveling at 64 miles per hour in a 55-mile-per-hour zone. Patrolman Hughes apprehended Hagstrom, who conceded that he was operating his motor vehicle at that time and that he was speeding. Hughes issued a citation to Hagstrom for speeding and, in addition, called State Radio which indicated that Hagstrom's driver's license was under suspension. Hughes then immediately informed Hagstrom that his driver's license had been suspended and that Hagstrom should accompany him to the Burleigh County Sheriff's office. After arriving at the sheriff's office, Hughes again contacted State Radio and the suspension of Hagstrom's driver's license was reconfirmed. Hughes then issued a citation to Hagstrom for driving while Hagstrom's license was under suspension, and he then returned Hagstrom's driver's license to him. Hagstrom informed Hughes that he desired to check with the Drivers License Division of the State Highway Department concerning the status of his driver's license.

Hagstrom's license was ordered suspended by the Drivers License Division on May 13, 1978, and a copy of such suspension order was mailed to Hagstrom at Wilton, North Dakota, which was his correct address, on May 11, 1978. The grounds stated in the order of suspension were based on an accumulation of excess points as the result of previous operating violations. An affidavit of mailing executed by Debra Eckroth, sworn to before a notary public, confirms the mailing date of the suspension order as being May 11, 1978. The mailing date was also corroborated by the testimony of Norma Breckel, supervisor of the driver improvement section of the Drivers License Division which processes convictions and suspensions with regard to driving violations.

Mr. Hagstrom contends that he had no knowledge of his license suspension in May 1978, and that he never received such order of suspension in the mail. Hagstrom, in support of his contention, testified that he has had the same mailing address for 35 years and that this address is on his driver's license; that during the month of May 1978 his mail was picked up by his son Blaine Hagstrom, his employee Marshall Samuelson, or by himself; that he never received an order of suspension of his license during the month of May 1978, but that he did receive such a notice in June 1978, as a result of another operating violation. Blaine Hagstrom and Marshall Samuelson corroborated Hagstrom's testimony.

Hagstrom's counsel, at the close of the State's case, moved for a dismissal of this criminal action on two grounds. Hagstrom's first ground in support of the motion of dismissal was that the State failed to prove that the order of suspension which was mailed on May 11, 1978, was ever received; and, as a second ground, Hagstrom urges that even though the suspension order was mailed on May 11, 1978, it does not

state that Hagstrom could not continue to operate his automobile.

The issues which this court must resolve are as follows:

1. Is the State required to prove that Hagstrom received the May 13, 1978, order of suspension?

2. Is the State required to prove that an order of suspension must state that a licensee cannot continue to operate a motor vehicle?

The statutes which are applicable in deciding this case are § 39–06.1–10(1), (2), (5), and § 39–06–37 of the North Dakota Century Code.

Section 39–06.1–10, N.D.C.C., provides, in pertinent part:

1. . . . When the driving record shows that the licensee has an accumulated point total of twelve or more points, assigned on the basis of the schedule contained in subsection 3 of this section, the authority shall notify the licensee of its intention to suspend his operator's license, and shall notify him that he may have an administrative hearing. If the licensee makes a written request for a hearing within ten days after mailing of the notice herein provided for, the hearing shall be held in accordance with the applicable provisions of chapter 28–32. . . .

2. If the licensing authority confirms, after hearing or opportunity for hearing, that the licensee's driving record has an accumulated point total of twelve or more points, the licensing authority shall suspend his operator's license according to the following schedule:

| Accumulated Point Total: | Period of Suspension: |
|---|---|
| a. Twelve | 7 days |
| b. Thirteen and above | 7 days for each point over eleven |

Surrender and return of licenses suspended pursuant to this section shall be governed by the provisions of section 39–06–37.

.    .    .    .    .

5. A suspension shall be deemed to have commenced when the order of suspension is delivered to the licensee at his address of record in the department. Constructive delivery under this section shall be considered as occurring forty-eight hours after proper deposit in the mails.

Section 39–06–37, N.D.C.C., provides:

"*Surrender and return of license.*—1. The commissioner upon canceling, suspending, or revoking a license shall require that such license shall be surrendered to and be retained by the commissioner.

2. If any person fails immediately to return to the commissioner any license or permit which has been canceled, suspended, or revoked, the order of the commissioner shall authorize any highway patrolman or peace officer to secure possession thereof and return the same to the commissioner. A suspension, revocation, or cancellation shall be deemed to have commenced when the order is delivered to the licensee at his address of record in the department. Constructive delivery under this section shall be considered as occurring forty-eight hours after proper deposit in the mails."

However, it is the obligation of the licensee under § 39–06.1–10(1), N.D.C.C., to make a written request for a hearing within ten days after the mailing of the notice. Hagstrom has previously asserted that the State has failed to prove that the order of suspension dated May 13, 1978, and mailed on May 11, 1978, was ever received by Hagstrom. When a driver's license is suspended, however, there is provision for a pre-suspension hearing. Hagstrom's counsel concedes on oral argument that a notice of intention to suspend was mailed to Hagstrom and that Hagstrom did not request a hearing pursuant to § 39–06.1–10(1), N.D.C.C.

■ The affidavit of mailing is an integral part of the order of suspension and shows that an order of suspension was mailed on May 11, 1978, to Hagstrom.

In the case of *State v. Sinner*, 207 N.W.2d 495 (N.D.1973), we held, in paragraph 3 of the syllabus:

"3. An automobile driver is properly served with the order of suspension of his driver's license by the mailing of a copy of such order to him at his address by regular mail."

We adhere to the holding in the *Sinner* case; thus, Hagstrom's argument in the case at bar is unpersuasive.

■ Hagstrom cites §§ 39–06–37 and 39–06.1–10(5), N.D.C.C., and specifically argues that the phrase "constructive delivery" has a meaning other than that conveyed in these two statutes. A perusal of these two statutes which include this phrase reveals that the legislature intended that "constructive delivery" would be effective forty-eight hours after mailing. Any other interpretation of the phrase "constructive delivery" as contained in §§ 39–06–37 and 39–06.1–10(5), N.D.C.C. would nullify these statutes, and would create an insurmountable task for the Drivers License Division of the State Highway Department in order to assure compliance with these two sections. Certainly, the legislature did not intend to confront the Drivers License Division with such a dilemma. Furthermore, every motorist is, of course, charged with notice of the contents of the statutes specifying the points assessed for various violations of the motor vehicle statutes. In the instant case, Hagstrom had previously received a notice of intention to suspend his driver's license, as well as an order of suspension. When he did not request a hearing he should have known that his driving privileges would soon be suspended.

■ Hagstrom also contends that a California statute provides that a person who drives after his license is suspended, in order to be guilty of driving under suspension, must have knowledge of the suspension; and no knowledge of the suspension is a defense.

■ Hagstrom then alludes in his brief to this court that improper notice by the Drivers License Division of the State Highway Department is in contravention of the Due Process Clause of Section 1 of Article XIV of the United States Constitution which, in pertinent part, states:

". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

Hagstrom's contention is without merit.

■ The rule is elementary that an issue or contention not raised or considered in the trial court cannot be tried for the first time on appeal from the judgment [*Remmick v. Mills*, 165 N.W.2d 61, 68 (N.D. 1968)]; nor will this court consider constitutional questions not raised in the trial court [*McCoy v. Davis*, 39 N.D. 328, 164 N.W. 951 (1917); *Empey v. Rapid City*, 103 N.W.2d 861 (N.D.1960)].

This court, in *In Re Estate of Jensen*, 162 N.W.2d 861 (N.D.1968), considered a constitutional issue which was raised pursuant to Rule 60(b) of the North Dakota Rules of Civil Procedure. However, that case is distinguishable from the instant case in that no post-trial motions were ever presented to the trial court.

Furthermore, Hagstrom's brief is deficient in that it simply mentions the constitutional issue without any citations or supportive reasoning. The State's brief has not even mentioned the constitutional issue. This court aptly stated in *So. Valley Grain Dealers v. Bd. of County Commissioners of Richland County*, 257 N.W.2d 425, 434 (N.D. 1977), that

"One who attacks a statute on constitutional grounds, defended as that statute is by a strong presumption of constitutionality, should bring up his heavy artillery or forego the attack entirely."

In addition, since Hagstrom did not request a hearing pursuant to § 39–06.1–10(1), N.D.C.C., he is not in a position to assert lack of notice and consequent lack of due process under Article XIV of the United States Constitution.

■ Hagstrom has also asserted that the order of suspension mailed May 11, 1978, and dated May 13, 1978, did not state that he should cease operating his automobile.

Hagstrom's argument is unpersuasive. A review of the order of suspension shows that it succinctly states that the order of suspension is an order on Hagstrom's driver's license because of the accumulation of a total of thirteen points and further states that Hagstrom was required to surrender his driver's license to the Drivers License Division.

■ Although the second order of suspension for another distinct violation by Hagstrom of the motor vehicle statutes, which violation occurred at a subsequent date, is more definitive, it does not invalidate the order of suspension to Hagstrom dated May 13, 1978. The order of suspension is self-explanatory.

For reasons stated in the opinion, the judgment of the Burleigh County Court of Increased Jurisdiction is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.