**CITY OF MINOT, a municipal corporation and political subdivision of the State of North Dakota, Plaintiff and Appellee,**

v.

**Clifford W. JOHNSTON and Joan M. Johnston, Defendants and Appellants.**

**Civ. No. 10950.**

Supreme Court of North Dakota.

Dec. 18, 1985.

Nevin Van de Streek, City Atty., Minot, for plaintiff and appellee.

Ella Van Berkom, Minot, for defendants and appellants.

ERICKSTAD, Chief Justice.

Clifford and Joan Johnston (Johnston) appeal from a district court judgment ordering removal of a fence constructed on a flood protection dike in Minot and dismissing Johnston's counterclaim for damages and for the abatement of a nuisance. We affirm.

In 1981, Johnston purchased residential property upon which a flood protection dike had been constructed. A previous owner of the property had granted the Ward

County Water Management District one of many permanent easements for flood protection. The easement, which was recorded in 1977, provides in pertinent part:

"That GRANTOR hereby grants to GRANTEE (subject to conditions hereinafter contained) permanent flowage easement rights in and over the land hereinafter described for the purposes of permitting high water flow of the Mouse River to flow over and across the easement hereinafter described, with the GRANTEE having the further right and authority to:

\* \* \* \* \* \*

3. Prevent any construction of any nature, other than that done by the GRANTEE, upon the described easement."

In 1983, Johnston resolved to build a fence on top of the dike to afford greater privacy from persons traversing the dike and to afford greater protection to his children. Johnston asserts that he received oral permission from the City Engineer in April, May, or June of 1983 to build the fence. Johnston began building the fence in July 1983. Upon observing a "Stop Work" notice on the fence, Johnston contacted the City Engineer, who, by letter dated July 8, 1983, granted permission to build a fence. By letter of July 13, 1983, the City Engineer rescinded his approval, stating that he had been unaware that the easements prohibited construction on the dikes and offering to discuss an alternate fence location.

Johnston later contacted a member of the Ward County Water Resource Board (formerly the Ward County Water Management District, hereinafter referred to as the Water Board), who, according to Johnston, indicated that the Water Board did not "see any problem." [1] The Water Board took no official action on the matter.

By resolution of November 14, 1983, the Water Board assigned its flood protection easements to the City of Minot (the City), which accepted the assignment on December 5, 1983. The motion to accept the assignment also provided that "the city administration be directed to carry out the terms of the easements including legal action by the city attorney if necessary."

On December 22, 1983, the City commenced this action to require removal of the fence. Johnston answered and counterclaimed to recover damages and to require the City to protect his privacy and to protect children against the hazard created by the dike. The trial court entered a partial summary judgment requiring Johnston to remove the fence and reserved for trial the issue of whether or not the City should be required to reimburse him for any portion of the fence built in reliance on statements of the City Engineer. An appeal from the partial summary judgment was dismissed for lack of a Rule 54(b), N.D.R.Civ.P., certification.

Following a trial in which Johnston was permitted to present evidence as though a motion to set aside the summary judgment had been granted, judgment was entered requiring Johnston to remove the fence and dismissing the counterclaim. On appeal, Johnston has raised the following issues:

"Is the Final Judgment of the District Court in this case sustained by the facts and the law?

"Did the Court err

1) in ordering the destruction of the Defendant's fence;

2) in failing to allow the Defendant's compensation for materials purchased in reliance upon the actions of the City;

3) in failing to take note of the necessity for protecting children from the hazard of an unprotected dike?"

In support of his argument that the trial court erred in ordering removal of the fence, Johnston asserts: (1) that the City is estopped by its actions from requiring him

---

1. That Water Board member stated in a pretrial affidavit that the Ward County States Attorney had advised the Water Board that it had no jurisdiction over the easement and that he "then contacted Mr. Johnston and stated that the Ward County Water Resource Board had no jurisdiction and that they did not care if the fence was constructed or not."

278

to remove the fence; (2) that he has been improperly subjected to selective enforcement in that, while other persons have built fences on the dike with and without permission, Johnston is the only one against whom the City has brought an action to compel removal of a fence and he is therefore being discriminated against in violation of §§ 21 and 22, N.D. Const.; and (3) the City's position is arbitrary and unreasonable.

We agree with the sentiment expressed by counsel for the City when he stated at oral argument:

"I'm not contending that the City of Minot, or Ward County for that matter, covered themselves with glory in this case."

We are unable to conclude, however, that the City is estopped by its actions or those of the Water Board or its members from requiring Johnston to remove the fence, the construction of which the City is clearly empowered to prevent under the unambiguous terms of the easement.

■■■ While "estoppel against the government is not absolutely barred as a matter of law ... the doctrine is not one which should be applied freely against the government." *Blocker Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912, 920 (N.D. 1984).

"Estoppels against the public are little favored. They should not be invoked except in rare and unusual circumstances, and may not be invoked where they would operate to defeat the effective operation of a policy adopted to protect the public." Syllabus 4, *Abbey v. State*, 202 N.W.2d 844 (N.D.1972).

The City did not have authority to either enforce or waive the provisions of the easement until it accepted the assignment of the easement on December 5, 1983. Until then, such authority was vested in the Water Board. Thus, the City Engineer clearly exceeded his authority when he granted Johnston permission to build the fence. The City is not estopped by an act of its engineer in excess of his authority. *Daco-*

*tah Hotel Company v. City of Grand Forks*, 111 N.W.2d 513 (N.D.1961).

■■■ Nor is the City estopped by any indication of permission that Johnston may have received from an individual member of the Water Board. The Water Board never acted collectively to grant Johnston permission to build the fence. The Water Board must act collectively and neither it nor the City as assignee of the easement is bound by any act of an individual member. *See Hart v. Bye*, 86 N.W.2d 635 (N.D.1957); *Rolette State Bank v. Rolette County*, 56 N.D. 571, 218 N.W. 637 (1928).

Johnston next asserts that the trial court erred in ordering removal of the fence because he has been improperly subjected to selective enforcement and is therefore being discriminated against in violation of §§ 21 and 22, N.D. Const.

Merely alleging unconstitutional action by the City is insufficient to raise a constitutional issue. *See Schwarting v. Schwarting*, 354 N.W.2d 706 (N.D.1984). One alleging unconstitutional administration, like one alleging the unconstitutionality of a statute, "should bring up his heavy artillery or forego the attack entirely." *Southern Valley Grain Dealers v. Bd. of Cty. Com'rs of Richland Cty.*, 257 N.W.2d 425, 434 (N.D.1977).

The easement, which gives the City the right to "[p]revent any construction of any nature, other than that done by the GRANTEE, upon the described easement," is neutral. Nevertheless,

"... if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." Syllabus 11, *State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749 (N.D.1966).

"The Constitution forbids not only discriminatory laws but also discriminatory enforcement of nondiscriminatory laws. *Yick Wo v. Hopkins*, 118 U.S. 356, 6

S.Ct. 1064, 30 L.Ed. 220 (1886)." *State v. Wilt,* 371 N.W.2d 159, 160 (N.D.1985).

■ Only invidious discrimination is prohibited, and to show unequal administration of the easement Johnston must show an intentional or purposeful discrimination by the City. *State v. Gamble Skogmo, Inc., supra.* Johnston showed that he was the only property owner against whom the City had brought an action to compel removal of a fence constructed on the dike; that other owners of property covered by flood protection easements had built fences on the dike; and that officials of the City had learned of those other fences.[2] Under the circumstances of this case, those facts do not prove intentional or purposeful discrimination.

Until December 5, 1983, the City had no authority to enforce the easements. The City brought suit against Johnston on December 22, 1983. Thus, the City had had enforcement authority for only a short time before it first exercised its authority. City officials have indicated that they regard this case as a "test case" and, if they are successful, will proceed to seek the removal of other fences on the dike. We see no invidious discrimination by the City in choosing to file one suit to compel removal of one fence rather than several suits to remove several fences. Reforming the problem of unauthorized fences on the flood protection dikes may take one step at a time. *See State v. Gamble Skogmo, Inc., supra.* The outcome of this case may obviate the necessity of filing additional suits to remove other fences.

■ Finally, Johnston asserts that the trial court erred in ordering removal of the fence because the City's position that it will permit fences to be built over the dike perpendicular to the river but not along the top of the dike parallel with the river is arbitrary and unreasonable. Johnston's fence extends along the top of the dike, parallel to the river.

The City Manager testified that because of "the motorcycles and the bicycles and all the rest of the traffic that runs off these dikes and bothers people," he would allow perpendicular fences:

"Q  In other words you would let them put up a fence?

"A  Perpendicular across the dike, yes, I would. In a way of explanation, when you're doing emergency work, number one, or when you're doing maintenance work, number two, a fence perpendicular across the dike does not prohibit access from both directions. You can get there. Number two, it's much easier to knock down during an emergency and well, those are the two main reasons. And the principle overlying reasons are the ones you expressed about vehicles who don't belong there and people who don't belong there being impaired from using the dike."

Among the items of maintenance work mentioned by the City Manager are such things as periodic dredging of sediment on the bottom of the river, and annual maintenance, including mowing the riverbank, poisoning growth in the riprap, and replacing riprap torn up by vandals or high water. The City has determined that perpendicular fences across the dike provide better access for the performance of maintenance than do parallel fences along the top of the dike, and has therefore chosen to permit perpendicular fences and prohibit parallel fences. In *Dacotah Hotel Company v. City of Grand Forks, supra,* 111 N.W.2d at 516, we stated:

"The power to determine when and how the rights of the public shall be exercised and served is vested primarily in the governing body of the city. That body has determined that the safety and convenience of the public will be served by the removal of the trees and island. Under the evidence it appears that such a

---

**2.**  The City Manager testified that it was "[t]he Johnson [sic] fence building and Mr. Johnson [sic] telling me of other fences" that prompted him, after the City accepted the easements, to start the process of surveying the easement areas for obstructions and notifying the owners about them.

determination is well within the power and the discretion of the city council and its exercise is therefore not within the province of the courts to disturb."

Similarly, the City's determination that the public safety and convenience will be served by permitting perpendicular fences but not parallel fences is within the City's power and discretion and is not within our province to disturb.

Johnston asserts that the trial court erred in denying him compensation for materials purchased to construct the fence in reliance upon actions of the City. We disagree. The trial court found that Johnston's expenditures were not made in reliance upon the City's letter of July 8, 1983. Since the expenditures were made before that date, the finding is not clearly erroneous.

■ Johnston testified that the City Engineer had given him "verbal permission about I would say somewhere between April and May over the telephone." The City Engineer stated in a pretrial affidavit:

"3. On or about April or May, 1983, I received a telephone call from someone whose name I cannot remember at this time asking if the caller could construct a fence on the Souris River dike on his property. At this time, I referred the caller to the U.S. Army Corps of Engineers in Minneapolis, Minnesota since the Corps was deeply involved in the flood protection construction within the City of Minot in the 1970's.

"4. I have no recollection of giving any oral permission to Mr. Johnston to install the fence between that call in April or May, 1983 and the observation of the construction of the fence upon the dike portion of Mr. Johnston's property in early July, 1983."

The trial court did not resolve this factual dispute by making a finding of fact with regard to the granting of verbal permission to build the fence. Any reliance placed upon oral permission granted by the City Engineer, if any, is misplaced. Johnston could not justifiably rely on oral permission given by a city official to build a fence on an easement owned by the Water Board.

The facts that there are other fences on the dikes and that the City once gave permission to another property owner to build a perpendicular fence on a dike at a time when the City had no authority over the easements do not constitute elements upon which Johnston could justifiably rely in building the fence or grounds upon which to compel the City to reimburse Johnston for materials purchased for building the fence.

■ Finally, Johnston asserts that the trial court erred "in failing to take note of the necessity for protecting children from the hazard of an unprotected dike." In its conclusions of law, the trial court stated:

"8. ... The Johnstons further testified at the trial that because the City is not willing to extend permission to them to build their fence along the top of the dike and parallel to the river a hazard to their children is created because such a fence if allowed would constitute a barricade which would prevent the children from falling in the river.... [I]nsofar as the safety of the children is concerned, the Johnstons could build a fence parallel to the river but off the easement area, which fence would accomplish everything in the way of safety which the present fence accomplishes, albeit at one point such a fence could be close to the Johnston house and thus presumably less desirable than the present fence...."

Thus, although the trial court dismissed the counterclaim, the court did address the matter of the safety of the Johnston children by noting that Johnston could protect them by placing a fence at a different location off the easement. Johnston acknowledged at oral argument that a perpendicular fence, which the City will permit, would eliminate the traffic problems caused by persons traversing the dike on bicycles, snowmobiles, and motorcycles. He contends, however, that a perpendicular fence would not protect his children from walking up the side of the dike and falling into the river. The trial court's finding of fact (although denominated a conclusion of law) that "the Johnstons could build a fence parallel to the river but off the ease-

ment area, which fence would accomplish everything in the way of safety which the present fence accomplishes" is not clearly erroneous. Johnston, however, does not wish to build a fence closer to his house. When asked at trial if he could not build the fence closer to his house, Johnston replied: "No, I won't cut my yard in half." We find no error.

In our view, Johnston's reference to *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), is inapposite. *Kitto* abolished governmental immunity for political subdivisions. *Kitto* does not, however, provide authority for the courts to presently require the City "to provide protection for the safety of the children of the Defendants," as requested in Johnston's answer and counterclaim. What, if any, prophylactic measures the City ought to adopt to reduce the risk of harm to children posed by the flood protection dikes is a matter that would more appropriately be addressed to the governing body of the City or to the Legislature than to the judiciary.

For the reasons stated, the judgment is affirmed.

GIERKE, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.