**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Reginald Elbert TWEED, a/k/a Reggie Tweed, Defendant and Appellant.**

**Cr. No. 910380.**

Supreme Court of North Dakota.

Oct. 6, 1992.

John T. Goff (argued), State's Atty., Fargo, for plaintiff and appellee.

Brothers & Beauchene, Fargo, for defendant and appellant; argued by Benjamin E. Thomas, Fargo.

ERICKSTAD, Chief Justice.

Reginald Elbert Tweed appeals from a Cass County District Court judgment of conviction for murder. We affirm.

On October 24, 1991, Tweed was found guilty by a jury of class AA felony murder and theft of property and was sentenced to life in prison on October 25, 1991. His appeal presents this Court with two issues: 1) whether or not the trial court erred in failing to instruct the jury on the lesser included offense of negligent homicide; and 2) whether or not the language of the murder statute under which Tweed was convicted is unconstitutionally void for

vagueness.[1] Tweed's conviction for theft of property was not appealed to this Court.

On or about April 8, 1991, the deceased body of Terry Dorff, age 32, was discovered at his Fargo residence. Dorff was found in a prone position on his waterbed, he had been gagged, and "hog-tied" with speaker wire.[2] There was a large, bloodied rock beside his head. His face and head were badly beaten. He had on a shirt which was unbuttoned, and he was unclothed from the waist down. The cause of death was probably a combination of asphyxia (due to the gag, the "hog-tie" position, and the position of the face against the waterbed) and blood loss (due to the head injuries).

Also found at Dorff's residence were a set of car keys with some very unique key chains attached to the key ring. These keys were either lying underneath Dorff's body or beside it. In an attempt to find leads for the murder, the Fargo police displayed the keys and key chains to the media. Tweed's wife, Raymona, saw photographs of them in the newspaper and contacted the police, stating that the keys and key chains belonged to her husband. Subsequently, Tweed went to the Cass County Jail to claim the keys and key chains. During that visit, he admitted to the authorities that he and David Sumner had been at Dorff's residence on the early morning of Dorff's death, that they hit Dorff about the face and head with their fists, that they bound him in the "hog-tie" position, that they placed a large gag in his mouth, that they struck him on the head with a large rock, and then they fled his residence in Dorff's car.

During the trial, Tweed testified that Dorff was a homosexual, and that Dorff made advances toward Tweed after inviting Tweed and Sumner to his apartment, subsequent to meeting them at the adult bookstore in Fargo. Tweed said the advances by Dorff made him very angry and he began hitting Dorff in the face and head area with his fists, and that Sumner joined in the beating. Tweed stated that Dorff began hitting him back, yelling, and that Dorff threatened to call the police. Tweed explained that he and Sumner gagged and "hog-tied" Dorff to prevent him from making noise, and to keep him from fighting back. Tweed said they then hit Dorff over the head with the large rock to knock him out, "so we could get a head start before he woke up and called the police." Tweed testified that during the incident he simply exercised "bad judgment" and that things just "escalated."

At the close of the trial, the jury was instructed on class AA felony murder, class A felony murder, and manslaughter. The jury was not, however, instructed on negli-

---

1. Tweed was convicted under Section 12.1–16–01(1), N.D.C.C. In relevant part, that statute provides:

   "1. A person is guilty of murder, a class AA felony, if he:
   a. Intentionally or knowingly causes the death of another human being;
   b. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life; ...."

   Tweed asserts on appeal that the language "extreme indifference to the value of human life" is void for vagueness. The jury was given both the "intentionally or knowingly" language and the "extreme indifference" language in one instruction. Tweed further asserts that the jury convicted him under the "extreme indifference" language because the prosecution never argued that he committed an "intent to kill" murder. Instead, he claims, the State argued only that he exhibited extreme indifference to the value of Terry Dorff's life.

2. During her testimony, the coroner who performed the autopsy on Dorff, Dr. Maureen Jane Frikke, explained to the jury the meaning of a "hog-tie" position:

   "Q. Okay. We haven't talked about the hog-tie position really. What is that?

   "A. ... It involves pulling the arms behind the back and handcuffing them or tying the arms, then handcuffing or tying the ankles together, and then putting the patient on their stomach and pulling the ankles up so that they're up close to the hands. So that the body, you know, the hands and the feet are pulled up together behind the body. This way the patient—the person can't kick, he can't walk, and he can't use his hands for defensive measures.

   "Q. To your knowledge is that method used long—any longer in law enforcement practices?

   "A. It is very strongly discouraged amongst law enforcement officers, because it's such a dangerous position for the person who is tied."

gent homicide, a lesser offense of murder and manslaughter. Tweed's attorney requested an instruction on negligent homicide, but the trial court refused to include one with the rest of the instructions.[3] The jury convicted Tweed of class AA felony murder, and the court sentenced Tweed to life in prison.

■ On the first issue before this Court, that of the lack of an instruction on the lesser included offense, it should be noted that a defendant does not have a constitutional right to a lesser included offense instruction. "[W]e have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process...." *Beck v. Alabama,* 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 .(1980). *See also Keeble v. United States,* 412 U.S. 205, 213, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973); *Schad v. Arizona,* — U.S. —, — – —, 111 S.Ct. 2491, 2504–05, 115 L.Ed.2d 555 (1991); *State v. Sheldon,* 301 N.W.2d 604, 608 n. 1 (N.D.1980), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981); *State v. Houser,* 261 N.W.2d 382, 384 (N.D.1977); *State v. Piper,* 261 N.W.2d 650, 653 (N.D.1977).

■ "[A] determination that an offense is a lesser included offense does not necessarily require that a lesser included offense instruction be given upon request." *State v. Langan,* 410 N.W.2d 149, 152 (N.D. 1987). Only under certain circumstances will the lesser included offense instruction be required. "[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."

*Houser, supra,* 261 N.W.2d at 384 (*quoting Keeble, supra,* 412 U.S. at 208, 93 S.Ct. at 1995).

We implement a two-pronged "independent evidence" test to determine whether or not the lesser included offense should be given to the jury. We have said:

"The test is not merely whether or not the offense is a lesser included offense of the basic offense charged, but rather is whether or not there is evidence which will create a reasonable doubt as to the greater offense and support a conviction of the lesser included offense. The 'beyond a reasonable doubt' test also applies to the lesser included offense."

*Piper, supra,* 261 N.W.2d at 654. *See also Langan, supra,* 410 N.W.2d at 152, *State v. Gross,* 351 N.W.2d 428, 431 (N.D.1984); *State v. Skjonsby,* 319 N.W.2d 764, 776–77 (N.D.1982); *State v. Trieb,* 315 N.W.2d 649, 656 (N.D.1982); *Houser, supra,* 261 N.W.2d at 385.

■ The evidence in this case does not support an instruction on negligent homicide. Tweed's conduct could not be conceived by reasonable people to be negligent conduct. Tweed, during his trial, admitted that he acted either recklessly or negligently on the morning of Dorff's death.

"Q. Do you feel that you may have act—acted during the whole scope of this situation either recklessly or negligently?

"A. Yes."

In closing arguments, Tweed's attorney told the jury that his client was reckless. What defense counsel disputed in closing argument was not Tweed's recklessness, but that his conduct constituted extreme indifference to human life.

3. Murder, as a class A felony in North Dakota, is codified in Section 12.1–16–01(2), N.D.C.C.:

"A person is guilty of murder, a class A felony, if the person causes the death of another human being under circumstances which would be class AA felony murder, except that the person causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse must be determined from the viewpoint of a person in his situation under the circumstances as he believes them to be. An extreme emotional disturbance is excusable, within the meaning of this

subsection only, if it is occasioned by substantial provocation, or a serious event, or situation for which the offender was not culpably responsible."

Manslaughter is codified in Section 12.1–16–02, N.D.C.C., as follows:

"A person is guilty of manslaughter, a class B felony, if he recklessly causes the death of another human being."

Lastly, negligent homicide is found in Section 12.1–16–03, N.D.C.C., and reads:

"A person is guilty of a class C felony if he negligently causes the death of another human being."

"It's been brought up that my client and I have discussed the case and my client said on the witness stand that he was reckless. . . .

"The very definition of reckless, as you will read, I will read it to you, will indicate that he was reckless. I mean there is no doubt about it."

Tweed is before this Court today, contending that the trial court erred in refusing to instruct the jury on the "lesser-included offense of negligent homicide." According to Tweed's *own* testimony, Tweed and David Sumner beat Terry Dorff about the head and face with their fists, "hog-tied" Dorff and placed a large gag in his mouth, hit him on top of the head more than once with a large rock, left him in a prone position on his waterbed, and then fled in Dorff's car to avoid the police. Nothing in these facts indicates to us that Tweed's actions were "negligent." Tweed's conduct appears intentional, willful, and maybe reckless, but NOT negligent. He and his attorney agreed with this conclusion at trial, albeit they had no encouragement to argue negligence. The facts in this case obviously do not pass the independent evidence test, and thus the trial court did not err in refusing to give the negligent homicide instruction.

In spite of the above evidence, Tweed asserts on appeal that the trial court was required to give the negligent homicide instruction in light of our decision in *State v. Leidholm*, 334 N.W.2d 811 (N.D.1983), and its progeny. We disagree.

First, it should be noted that previously, this Court has been reluctant to require trial courts to instruct the jury on all lesser included offenses of the crime charged regardless of the evidence presented at trial. Such a requirement could lead to a less reliable jury verdict.

"We are not satisfied that justice will be done if instructions on the lesser included offense are given regardless of the evidence because it may well lead the jury to a compromise decision, which is not compatible with the function of the jury in a criminal case."

*Piper, supra,* 261 N.W.2d at 654.

Additionally, *Leidholm* and its progeny are distinguishable from the case at hand. In *Leidholm,* we in essence held that if a trial court instructs the jury on self-defense at the defendant's request, and also instructs on manslaughter over the defendant's objection, then the court must instruct on negligent homicide because Section 12.1–05–08, N.D.C.C., so requires.[4]

"Whether or not a lesser included offense instruction on manslaughter is appropriate in a murder trial depends upon the particular facts and circumstances of the case. See *Trieb, supra,* 315 N.W.2d at 656. We have no question that the court's instruction on manslaughter was warranted in this case. See *Trieb, supra,* 315 N.W.2d at 656–657; Vol. II, Working Papers, Comment on Manslaughter, at 829 (1970).

"Moreover, any time the court instructs a jury on self-defense, it must of necessity include a special instruction on manslaughter as well as an instruction on negligent homicide. Sec. 12.1–05–08, N.D.C.C.; Vol. I, Working Papers, Comment on Excuse, at 271–272 (1970). See also [*People v.*] *Scott, supra,* [97 Ill. App.3d 899,] 53 Ill.Dec. [657,] 659–60, 424 N.E.2d [70,] at 72–73. The difference between self-defense and manslaughter is the reasonableness of the accused's belief that the use of force is necessary to prevent imminent unlawful harm. If the accused's belief is reasonable, he will be found to have acted in self-defense. If unreasonable, he is guilty of either manslaughter or negligent homicide, de-

---

4. Section 12.1–05–08, N.D.C.C. reads:
   "*Excuse.* A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under this chapter, even though his belief is mistaken. However, if his belief is negligently or recklessly held, it is not an excuse in a prosecution for an offense for which negligence or recklessness, as the case may be, suffices to establish culpability. Excuse under this section is a defense or affirmative defense according to which type of defense would be established had the facts been as the person believed them to be."

pending upon whether his belief was held recklessly or negligently, respectively. Sec. 12.1–05–08, N.D.C.C.; Final Report, Comment on § 608, *Excuse,* at 52 (1971); Vol. I, Working Papers, Comment on Excuse, at 271 (1970). See also *Weston,* [*v. State*], *supra,* 656 P.2d [1186,] at 1187–1188; *Scott, supra,* 53 Ill.Dec. at 659–60, 424 N.E.2d at 72–73."

*Leidholm,* 334 N.W.2d at 821.

The facts in *State v. Frey,* 441 N.W.2d 668 (N.D.1989), are also distinguishable. In *Frey,* the defendant wanted an instruction on self-defense, but objected to any instructions on lesser included offenses to murder. We held that a defendant has a right to waive instructions on lesser included offenses, stating that a defendant who does so, as a matter of trial tactics, "takes an all-or-nothing risk that the jury will not convict of the greater offense." *Id.* at 670.

Finally, in *State v. Wiedrich,* 460 N.W.2d 680 (N.D.1990), the defendant wanted no instructions on lesser included offenses, but the trial court, at the State's request, instructed on self-defense and manslaughter. Under those circumstances we held that it was reversible error for the trial court not to give a negligent homicide instruction.

In deciding those cases, we did not intend that anytime a court instructs on manslaughter, it must also instruct on negligent homicide irrespective of other defenses and the facts of the case. We merely held that when self-defense was urged, and a manslaughter instruction was supported by the facts and given to the jury, the court must also instruct on negligent homicide as required by the language of Section 12.1–05–08, N.D.C.C. (statute on excuse), and in light of Vol. I, Working Papers, Comment on Excuse, at 271–272 (1970). The foregoing three cases dealt with situations involving the defense of self-defense.

In the present case, Tweed did not raise the defense of self-defense, so Section 12.1–05–08, N.D.C.C., does not apply. Thus, even though the court instructed on manslaughter, it was under no compulsion, from *Leidholm* and its progeny, to instruct

on negligent homicide. To hold to the contrary would permit jurors to act as judges by allowing them to determine the sentences by their choice of lesser verdicts which could not be supported by the facts. That would not be justice.

Notwithstanding what we have said here, we recognize the importance of giving instructions on lesser included offenses justified by the particular facts of the case. Instructing the jury on a lesser included offense, *when the evidence so warrants,* provides a defendant with a "procedural safeguard."

"[W]hen the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense [robbery—intentional killing]—the failure to give the jury the 'third option' of convicting on a lesser included offense [felony murder] would seem inevitably to enhance the risk of an unwarranted conviction."

*Beck, supra,* 447 U.S. at 637, 100 S.Ct. at 2389.

The jury in the present case was given instructions on all lesser included offenses justified by the facts in this case. The jury was instructed on two lesser included offenses to the crime charged. Tweed was charged with class AA felony murder. The jury was instructed on that offense and also on the lesser included offenses of class A felony murder and manslaughter. The jury chose to convict Tweed of the greatest, most serious offense. The evidence did not convince the jury that Tweed was guilty of either of those lesser included offenses. It defies logic and all common sense to say that, had the jury been given an instruction on negligent homicide, an offense less serious than all the others, it would have found Tweed guilty of that least serious offense.

The United States Supreme Court was faced with a very similar situation in *Schad, supra.* The defendant in *Schad* had allegedly killed a man and stolen his car and camper. The trial court instructed the jury on first-degree murder and second-

degree murder. The defendant appealed his conviction of first-degree murder on the basis of error in not instructing the jury on the lesser included offense of robbery. In disposing of the case, the Supreme Court said:

> "The argument is unavailing, because the fact that the jury's 'third option' was second-degree murder rather than robbery does not diminish the reliability of the jury's capital murder verdict. To accept the contention advanced by petitioner and the dissent, we would have to assume that a jury unconvinced that petitioner was guilty of either capital or second-degree murder, but loath to acquit him completely (because it was convinced he was guilty of robbery), might choose capital murder rather than second-degree murder as its means of keeping him off the streets. Because we can see no basis to assume such irrationality, we are satisfied that the second-degree murder instruction in this case sufficed to ensure the verdict's reliability."

— U.S. at ——, 111 S.Ct. at 2505.

In the case before this Court, if the jurors were not convinced that Tweed was guilty of class AA felony murder, they could have convicted him of class A felony murder, or manslaughter. However, they chose not to. It would be an anomaly to state, under the facts of this case, that the verdict is not reliable because an instruction of the lesser included offense of negligent homicide was not given to the jury in light of the other choices of lesser verdicts, all of which were of greater degrees of severity with attendant greater punish-

ment. If Tweed's argument is that by adding negligent homicide at the "bottom" of the list of offenses, the jury might have been persuaded to choose not necessarily that offense but one less than AA murder, that argument is contrary to our previous decisions. Those decisions hold that by requiring independent evidence of greater and lesser included offenses, the court ensures that a jury will be less likely to reach decisions based on sympathy or on a desire to reach an agreement or to a compromise decision which is not compatible with the function of a jury in a criminal case, and more likely reach decisions based on evidence actually presented. *State v. Gross, supra; State v. Skjonsby, supra; State v. Piper, supra.*

The second issue brought on appeal before the Court is a constitutional void for vagueness contention as applied to Section 12.1–16–01(1)(b), N.D.C.C. Tweed asserts that the language causing "the death of another human being under circumstances manifesting extreme indifference to the value of human life" is unconstitutionally vague and in violation of his rights of due process.

■ We have been unable to find in the record that Tweed raised this contention before the trial court.[5] It is a well-established principle in this state that issues not raised below cannot be raised on appeal. "Generally, issues not raised in the trial court, *even constitutional issues,* will not be addressed on appeal." *State v. Miller* 388 N.W.2d 522 (N.D.1986) (emphasis added). *See also Hanson v. Williams County,* 452 N.W.2d 313 (N.D.1990); *State v.*

---

5. Tweed's counsel, during his closing argument to the jury, asserted that the meaning of the language in the statute was difficult to discern. However, counsel did not make a motion or brief the issue in the trial court. The attention given the constitutional challenge in closing argument was not sufficient to "raise the issue below." One must do more than merely assert that a statute is difficult to understand to appropriately raise a constitutional issue. As Justice Vogel said:

> "One who attacks a statute on constitutional grounds, defended as that statute is by a strong presumption of constitutionality, should bring up his *heavy artillery* or forego the attack entirely."

*So. Valley Grain Dealers v. Bd. of Cty. Com'rs,* 257 N.W.2d 425, 434 (N.D.1977) (emphasis added).

Tweed's counsel should have brought up his "heavy artillery" at the trial level. Alluding to vagueness during closing arguments can hardly even be considered a firecracker! Failure to sufficiently raise the issue at the trial court level precludes Tweed from raising the issue here. *See Meyer v. City of Dickinson,* 451 N.W.2d 113, 117 (N.D.1990); *Wisdom v. State, N.D. Real Estate Com'n,* 403 N.W.2d 19, 22 (N.D.1987); *City of Minot v. Johnston,* 379 N.W.2d 275, 278 (N.D. 1985); *Caldis v. Bd. of Cty. Com'rs, Grand Forks County,* 279 N.W.2d 665, 667 (N.D.1979); *State v. Hagstrom,* 274 N.W.2d 197, 200 (N.D.1979).

*Slapnicka,* 376 N.W.2d 33 (N.D.1985); *Family Center Drug Store, Inc. v. State Bd. of Pharmacy,* 181 N.W.2d 738 (N.D. 1970).

As noted in *Miller,* the narrow exception to this principle is found in Rule 52(b), North Dakota Rules of Criminal Procedure.

"(b) *Obvious Error.* Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Whether or not it is obvious error, in the interests of justice we will consider it.

■ When attacking the constitutionality of a statute, the scales are weighed in favor of the statute. The challenger must overcome a strong presumption of constitutionality.

"Presumptively, the statute is a valid enactment and the burden is on the appellant to show that it is not. 'Every reasonable presumption is in favor of the constitutionality of a statute enacted by the Legislature. 8 Cyc. 801; *O'Laughlin v. Carlson,* 30 N.D. 213, 152 N.W. 675. This presumption is conclusive, unless it is clearly shown that the enactment is prohibited by the Constitution of the state or of the United States. Cooley's Const. Lim., 7th Ed. 242; 8 Cyc. 801. The only test of the validity of an act regularly passed by a state Legislature is whether it violates any of the express or implied restrictions of the state or federal Constitutions.' *State ex rel. Linde v. Taylor,* 33 N.D. 76, 156 N.W. 561, L.R.A.1918B, 156, Ann.Cas. 1918A, 583. *See, also, State ex rel Sathre v. Board of University and School Lands,* 65 N.D. 687, 262 N.W. 60; *State v. First State Bank,* 52 N.D. 231, 202 N.W. 391."

*State v. Cromwell,* 72 N.D. 565, 9 N.W.2d 914, 918 (1943).

More recently, in *N.D. Council of School Adm'rs v. Sinner,* 458 N.W.2d 280 (N.D. 1990), where the issue was the constitutionality of a statute allowing for the delegation of legislative authority, in upholding the statute we said:

"All legislative enactments are imbued with a strong presumption of constitutionality, and the presumption is conclusive unless it is clearly shown that the statute contravenes the state or federal constitution. *State v. Hegg,* 410 N.W.2d 152, 154 (N.D.1987); *Richter v. Jones,* 378 N.W.2d 209, 211 (N.D.1985). Any doubt must be resolved in favor of the constitutionality of the statute. *Verry v. Trenbeath,* 148 N.W.2d 567, 571 (N.D. 1967)."

*Id.* at 285. *See also State ex rel. Lesmeister v. Olson,* 354 N.W.2d 690, 694 (N.D. 1984); *Paluck v. Bd. of Cty. Com'rs,* 307 N.W.2d 852, 857–858 (N.D.1981); *State v. Hanson,* 256 N.W.2d 364, 366 (N.D.1977); *Kessler v. Thompson,* 75 N.W.2d 172, 178 (N.D.1956). Thus, Tweed has the burden of rebutting the presumption of the constitutionality of the class AA felony murder statute. In doing so, he must clearly show that the statute violates the state or federal constitution.

■ Tweed bases his constitutional attack of the statute on the void for vagueness doctrine, claiming the statute violates his rights of due process guaranteed by the Fourteenth Amendment to the United States Constitution. The vagueness doctrine requires:

"that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Hoffman Estates v. Flipside, Hoffman Estates, Inc., supra* [455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)]; *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)."

*Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).[6]

**6.** Although it is difficult to ascertain from the

titles of *Kolender* and the five cases it cites,

*See also Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (U.S. Supreme Court upheld gender discrimination statute under void for vagueness challenge).

We have adopted this doctrine, and recognize its importance as applied to criminal statutes.

"The due process clauses of the State and Federal Constitutions require definiteness of criminal statutes so that the language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for judges and juries to fairly administer the law. *Olson v. City of West Fargo,* 305 N.W.2d 821, 828 (N.D.1981); *State v. Woodworth,* 234 N.W.2d 243, 245 (N.D.1975)."

*State v. Johnson,* 417 N.W.2d 365, 368 (N.D.1987). In *Johnson,* we went on to point out that there are two requirements of the vagueness doctrine:

"(1) that the statute provide adequate warning as to the conduct proscribed, and (2) that the statute establish minimal guidelines to govern law enforcement. *Kolender v. Lawson, supra; State v. Woodworth, supra; State v. Hagge,* 211 N.W.2d 395, 397 (N.D.1973); *see also* 21 Am.Jur.2d *Criminal Law* [Section] 17."

*Id.*

In light of our previous decision in *State v. Hanson,* 256 N.W.2d 364 (N.D.1977), we hold that the disputed language in the class AA felony murder statute does not violate the vagueness doctrine. In *Hanson,* North Dakota's reckless endangerment statute was challenged. The statute contained language which graded the offense as either a misdemeanor or a felony. If the defendant's conduct manifested "extreme indifference to the value of human life," the offense was a felony; otherwise the offense was a misdemeanor. Section 12.1–17–03, N.D.C.C. The defendant in *Hanson* asserted that this language was unconstitutional, and violative of his equal protection rights.

When faced with this challenge, we said:

"[w]e cannot say that the circumstances employed in the grading of the statute are arbitrary, unreasonable, or unwarranted. We believe that the grading phrase 'extreme indifference to the value of human life' is an *understandable and distinct definition* of what circumstances are necessary to bring the act within the felony offense. As such, it is a reasonable and rational method of distinguishing the greater crime from the lesser crime."

*Id.* at 369 (emphasis added). *See also State v. Halvorson,* 346 N.W.2d 704, 708–709 (N.D.1984) (recognizing that the language "under circumstances manifesting extreme indifference to the value of human life" was sufficiently definite to grade offenses); *Tison v. Arizona,* 481 U.S. 137, 157–158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987) (holding that "reckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill'"—and when combined with the commission of a felony supports the imposition of the death penalty).

The part of the class AA felony murder statute Tweed is challenging is the language "under circumstances manifesting extreme indifference to the value of human life." This language is identical to the language challenged in *Hanson.* Thus, *Hanson* is dispositive of Tweed's challenge. The language is not void for vagueness, instead it is an "understandable and distinct definition" of the conduct prohibited. *Hanson, supra,* 256 N.W.2d at 369. We conclude, therefore, that Tweed's void for vagueness challenge is without merit.

For the foregoing reasons, we affirm the judgment of the district court.

none of the cases are civil in nature. Instead, all involve penal or criminal statutes. *Kolender, supra* (loitering statute struck down under void for vagueness attack); *Hoffman Estates, Inc., supra* (village restrictive ordinance involving drug paraphernalia not unconstitutionally vague); *Smith, supra* (language of flag burning statute void for vagueness); *Grayned, supra* (definiteness of an anti-noise statute withstood void for vagueness challenge); *Papachristou, supra* (vagrancy statute found unconstitutionally vague); *Connally, supra* (state employment statute with criminal penalties found unconstitutionally vague).

VANDE WALLE, MESCHKE and JOHNSON, JJ., concur.

LEVINE, J., specially concurs and files opinion.

LEVINE, Justice, specially concurring.

I would have concluded that there was no obvious error and would not have addressed the constitutional question. Therefore, I do not concur in the constitutional determination.

Tweed did not raise the void-for-vagueness issue before the district court and I would adhere to traditional precepts of state and federal law and decline to entertain the issue now. *E.g., Gange v. Clerk of Burleigh County District Court,* 429 N.W.2d 429 (N.D.1988); *State v. Miller,* 388 N.W.2d 522 (N.D.1986).

Because Tweed did not advance his constitutional claim in the district court, we may only consider it if the record discloses "obvious error" within the meaning of Rule 52(b), NDRCrimP. That rule says that obvious errors affecting substantial rights may be noticed even though they were not brought to the district court's attention. "But the power to notice obvious error, whether at the request of counsel or on the court's own motion, is one the courts should exercise cautiously and only in exceptional circumstances. The power should be exercised only where a serious injustice has been done to the defendant." Explanatory Note, NDRCrimP 52.

Only constitutional error that is "egregious" and "grave" is subject to the obvious error rule. *See United States v. Agnew,* 931 F.2d 1397, 1407 (10th Cir.1991). I am confident that the violation asserted by Tweed is neither egregious nor grave and does not constitute obvious error.

Tweed alleges that the class AA felony statute is unconstitutionally vague. Not surprisingly, the obviousness of an alleged error plays a major role in our determination of whether there is obvious error. *E.g., United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982); *United States v. Blackwell,* 694 F.2d 1325, 1341 (D.C.Cir. 1982). There is nothing "obvious" about the alleged vagueness of the statute. The statute is, of course, presumed to be constitutional. We examined identical language in the reckless endangerment statute and found no constitutional violation in *State v. Hanson,* 256 N.W.2d 364 (N.D.1977). A claim which has been decided against the defendant's constitutional argument in another case cannot be obvious error in this case. Nor is it obvious error even if the claim is novel. *United States v. Blackwell, supra,* 694 F.2d at 1342 n. 22. If asserted error is not obvious merely because no court has yet addressed the issue, neither can it be obvious when a comparable issue has been resolved unfavorably to the claimant.

I see no serious injustice against the defendant and no threat, therefore, to the integrity and fairness of our system. I would affirm Tweed's conviction without reaching the merits of the constitutional claim. We have long said that we do not decide constitutional questions unless they are necessary to our decision. *State v. King,* 355 N.W.2d 807 (N.D.1984).